**David KISSELMAN, Plaintiff–Appellant,**

**v.**

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Defendant–Appellee.**

**No. 10CA1453.**

Colorado Court of Appeals, Div. VI.

Dec. 8, 2011.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. I, § 5(3), and § 24–51–1105, C.R.S.2011.

The Gold Law Firm, L.L.C., Gregory A. Gold, Nelson Boyle, Greenwood Village, Colorado; Bahr & Kreidle, P.C., Michael P. Bahr, Littleton, Colorado; Law Offices of Michael P. Fossenier, Michael P. Fossenier, Denver, Colorado, for Plaintiff–Appellant.

Lambdin & Chaney, LLP, Suzanne J. Lambdin, Michael G. Paul, Denver, Colorado, for Defendant–Appellee.

Roberts Levin Rosenberg, P.C., Michael J. Rosenberg, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.

Opinion by Judge LOEB.

Plaintiff, David Kisselman, appeals the district court's order, pursuant to C.R.C.P. 56(h), that sections 10–3–1115 and –1116, C.R.S.2011, were "inapplicable" in this action against defendant, American Family Mutual Insurance Company. We reverse and remand with directions.

## I. Background and Procedural History

On April 4, 2005, Kisselman was injured in a car accident caused by an underinsured driver. At the time of the accident, Kisselman was covered by an American Family insurance policy that included uninsured/underinsured motorist and umbrella coverage up to $1.1 million.

After the accident, Kisselman made a claim against the other driver and, with American Family's permission, settled for the other driver's policy limits of $25,000. On June 30, 2006, Kisselman also made a claim under his insurance policy with American Family for underinsured motorist benefits to help pay medical costs, as well as for other damages and injuries.

In January 2008, because Kisselman and American Family were unable to amicably resolve Kisselman's claim, Kisselman demanded arbitration pursuant to his insurance policy. On April 1, 2008, to avoid having his legal claims barred by the statute of limitations, Kisselman filed a complaint in Denver District Court, naming American Family as defendant and asserting six claims for relief, as follows: (1) "Negligence by [the other driver]"; (2) "Negligence Per Se by [the other driver]"; (3) "Breach of Contract by

Defendant American Family"; (4) "Bad Faith Claim—Breach of Contract by Defendant American Family"; (5) "Unjust Enrichment of Defendant American Family"; (6) and "Punitive Damages."

While the procedural details of the upcoming arbitration hearing were still being negotiated, the General Assembly enacted two new Colorado statutes, sections 10–3–1115 and –1116 (collectively, the Statutes), effective August 5, 2008. Section 10–3–1115(1)(a) provides that an insurer "shall not unreasonably delay or deny payment of a claim for benefits owed." Section 10–3–1116(1) provides that a first-party claimant (such as Kisselman) may also bring an action for a breach of the statutory duty set forth in section 10–3–1115 to recover reasonable attorney fees, court costs, and "two times the covered benefit."

The arbitration hearing was held on November 10 and 11, 2008. The sole issue decided at the arbitration hearing was the amount of Kisselman's past and future damages stemming from the car accident. In a written arbitration award dated December 22, 2008, the arbitrator awarded Kisselman damages of $1,312,187.98, plus costs and interest. This amount was later reduced to $1,075,000 (Kisselman's policy limit of $1.1 million minus the $25,000 he had already recovered from the other driver), which American Family paid on January 15, 2009.

On April 29, 2009, Kisselman filed an amended complaint in this action, restating the six claims from his original complaint and adding a seventh claim for relief under section 10–3–1116. On August 13, 2009, Kisselman filed a second amended complaint, in which he dropped the negligence claims against the other driver and the punitive damages claim, and restated and renumbered the remaining claims, as follows: (1) "Breach of Contract by Defendant American Family"; (2) "Bad Faith Claim—Breach of Contract by Defendant American Family"; (3) "Unjust Enrichment of Defendant American Family"; and (4) "C.R.S. 10–311–16 [sic] (Improper Denial of Claims and Remedies for the Unreasonable Delay or Denial of Benefits)." On August 24, 2009, American Family filed its answer to the second amended complaint

and demanded a jury trial. Thereafter, the case was set for a jury trial, and discovery began in earnest.

In February 2010, Kisselman filed a motion for a determination of a question of law pursuant to C.R.C.P. 56(h), requesting the district court to determine whether sections 10–3–1115 and –1116 applied to his case. Kisselman asserted that sections 10–3–1115 and –1116 were applicable in two ways: (1) the Statutes applied retroactively, meaning that the Statutes applied to all of American Family's alleged acts of unreasonable delay or denial of benefits owed under his policy, including pre-effective date acts, or, in the alternative (2) the Statutes applied prospectively, meaning that the Statutes applied only to American Family's alleged acts of unreasonable delay or denial occurring after the Statutes' effective date of August 5, 2008. American Family filed a combined response and motion for summary judgment, in which it argued that the Statutes did not apply retroactively, that the Statutes did not apply prospectively because "Colorado does not recognize a continuing violation or ongoing bad faith claim," and that the court should grant summary judgment in its favor on all four of Kisselman's claims.

In reply, Kisselman first withdrew his argument that the Statutes applied retroactively, stating that he "withdraws the first argument related to retrospective application of § 10–3–1116 as being wholly unnecessary in this case given the conduct and misconduct of American Family ... after August 5, 2008." Next, Kisselman reiterated his argument that the Statutes applied prospectively to American Family's alleged acts of unreasonable delay occurring after August 5, 2008. American Family then filed a surreply and unopposed motion requesting oral argument on the issues raised in Kisselman's C.R.C.P. 56(h) motion.

The district court held a hearing on Kisselman's C.R.C.P. 56(h) motion on April 9, 2010, in which the parties advanced substantially the same arguments expressed in their briefs regarding the applicability of sections 10–3–1115 and –1116. During the hearing, Kisselman's counsel made clear that he was asking

the court to rule only on the prospective application of sections 10–3–1115 and –1116:

[The issue] is whether 10–3–[11]16 and 15 applies after August [5], 2008. That really is the issue before the Court. I think both parties believe that it's ripe for review at this point and that there I—whether there's a remedy available to Colorado citizens that if an insurance company acts unreasonably and unreasonably delays or denies covered benefits whether the remedy's available … to someone after August [5], 2008. [sic]

American Family's counsel also understood that the only issue before the court was how the Statutes should be applied prospectively, as demonstrated by this exchange:

[American Family's Counsel]: … [I]t sounds like we only now have the question of whether 1116 will apply to this case from the date it was enacted in August [5], 2008 and it sounds like we no longer need to address the argument of whether it can be applied retrospectively. Am I right about that?

[Kisselman's Counsel]: That—as simple as that.

On April 21, 2010, the district court issued its written ruling on Kisselman's C.R.C.P. 56(h) motion regarding the applicability of sections 10–3–1115 and –1116 to the present case. First, regarding retroactive application of the Statutes, the court noted that Kisselman had withdrawn his argument and that, therefore, the issue was "moot."

Second, regarding prospective application of the Statutes, the court rejected Kisselman's argument that the Statutes applied to new, post-effective date acts of unreasonable delay by American Family. In so ruling, the court relied on an unreported decision from the United States District Court for the District of Colorado that rejected an argument similar to Kisselman's because, under the Colorado law of common law bad faith claims, "an insurer's continued refusal to cooperate with an insured cannot serve as the basis for a separate bad faith claim if one has already been plead." *James River Ins. Co. v. Rapid Funding, LLC,* (D.Colo. No. 07–CV–01146–CMA–BNB, 2009 WL 524994, Mar. 2, 2009). As in *James River,* the district court rea-

soned that the claim at issue here accrued before the Statutes' effective date, and, therefore, the "alleged continuation of any unreasonable delay or denial of payment does not render the claim cognizable." Accordingly, the court concluded that sections 10–3–1115 and –1116 "are inapplicable in this case."

Kisselman then filed a motion for reconsideration on April 29, 2010. In his motion, Kisselman attributed the court's order to "confusion, error, or incompleteness," and, to help remedy the perceived problem, he pointed to four specific instances of American Family's alleged unreasonable delay occurring after August 5, 2008, and argued that any of these four acts was sufficient to state a claim under the Statutes. The court denied Kisselman's motion in a written order dated May 25, 2010, reasoning that although Kisselman

points to 'new conduct' (i.e., new acts of allegedly unreasonable delay), the fundamental legal defect remains: [Kisselman's] argument is premised on a continuing breach originating before the effective date of the legislation.

On June 7, 2010, the parties filed a stipulated motion for certification under C.R.C.P. 54(b) and to stay the remaining issues pending immediate appeal of the district court's order ruling that sections 10–3–1115 and –1116 were inapplicable. The district court granted the motion, staying all issues related to Kisselman's common law claims for breach of contract, bad faith, and unjust enrichment, as well as American Family's summary judgment motion.

This appeal followed.

## II. Standard of Review and Applicable Law

### A. C.R.C.P. 54(b) Certification

Although not argued by the parties, we must first consider whether the district court's order was properly entered as a final judgment under C.R.C.P. 54(b) and is, consequently, appropriate for appellate review. We agree that the C.R.C.P. 54(b) certification was proper.

C.R.C.P. 54(b) permits a court, in an action involving multiple parties or (as here) multiple claims for relief, to direct entry of a final judgment as to fewer than all the claims or parties. The rule provides an exception to the general rule that an entire case must be resolved by a final judgment before an appeal is brought. Accordingly, our jurisdiction to entertain the appeal of a decision so certified depends upon the correctness of the certification. *Harding Glass Co. v. Jones,* 640 P.2d 1123, 1126 (Colo.1982); *Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC,* 187 P.3d 1199, 1202 (Colo.App.2008).

■ A trial court may issue a C.R.C.P. 54(b) certification only if three requirements are met: (1) the decision certified must be a ruling upon an entire claim for relief; (2) the decision certified must be final in the sense of an ultimate disposition of an individual claim; and (3) the trial court must determine that there is no just reason for delay in entry of a final judgment on the claim. While the "no just reason for delay" question is committed to the trial court's discretion, that court's determinations regarding the other two requirements are "not truly discretionary." *Lytle v. Kite,* 728 P.2d 305, 308 (Colo. 1986); *see also Harding Glass Co.,* 640 P.2d at 1125; *Richmond Am. Homes,* 187 P.3d at 1202. *But see Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo.1986) (trial court's decision on finality "should be given substantial deference because that court is the one most likely to be familiar with the case").

Thus, we review de novo the legal sufficiency of the trial court's C.R.C.P. 54(b) certification. *Richmond Am. Homes,* 187 P.3d at 1203.

■ Here, the district court found that its C.R.C.P. 56(h) order "is a ruling upon an entire claim for relief and is final, in that it determines that [the Statutes] do not apply to the circumstances of this case." We agree with the district court's finding. The court's C.R.C.P. 56(h) order effectively amounted to a dismissal and ultimate disposition of Kisselman's fourth claim for relief. *See Richmond Am. Homes,* 187 P.3d at 1203 (order on C.R.C.P. 56(h) motion properly certified under C.R.C.P. 54(b) where the order was tantamount to entry of summary judgment on an entire claim). The district court also found that there was no just reason for delay and explained the reasons for its finding.

Accordingly, we conclude the district court properly certified its C.R.C.P. 56(h) order as a final judgment under C.R.C.P. 54(b) and, therefore, we proceed to consider the merits of Kisselman's appeal.

### B. Standard of Review

Under C.R.C.P. 56(h), a district court may enter an order deciding a question of law if "there is no genuine issue of any material fact necessary for the determination of the question of law." We review questions of law under C.R.C.P. 56(h) de novo. *Snook v. Joyce Homes, Inc.,* 215 P.3d 1210, 1217 (Colo. App.2009).

■ Likewise, the proper interpretation of sections 10–3–1115 and –1116 is a question of law we review de novo. *See Klinger v. Adams Cnty. Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006). In interpreting a statute, a court's primary goal is to effectuate the intent of the General Assembly. *Thurman v. Tafoya,* 895 P.2d 1050, 1055 (Colo. 1995). We look first to the plain text of a statute, reject interpretations that render words or phrases superfluous, and harmonize potentially conflicting provisions, if possible. *Hygiene Fire Prot. Dist. v. Bd. of Cnty. Comm'rs,* 205 P.3d 487, 490 (Colo.App.2008), *aff'd,* 221 P.3d 1063 (Colo.2009). We will give effect to the plain meaning of the statute's words and phrases, unless the result is absurd or unconstitutional. *Rodriguez v. Schutt,* 914 P.2d 921, 925 (Colo.1996).

■ If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. *Kauntz v. HCA–Healthone, LLC,* 174 P.3d 813, 816 (Colo.App.2007). Nonetheless, we may consider legislative history when there is substantial legislative discussion surrounding the passage of a statute, and the plain language interpretation of a statute is consistent with legislative intent. *See Welby Gardens v. Adams Cnty. Bd. of Equalization,* 71 P.3d 992, 995 (Colo.2003).

## C. Applicable Law

To be clear, the only issue presented on appeal concerns the prospective applicability of sections 10–3–1115 and –1116 to Kisselman's case. Kisselman's common law bad faith claim has not been dismissed or ruled on in a motion for summary judgment and, as such, is not part of this appeal. However, because the law of common law bad faith claims is integral to our analysis, we summarize that law below, before addressing in detail the statutory language of sections 10–3–1115 and –1116.

### 1. Common Law Bad Faith

■■■ An insurer must deal in good faith with its insured. *Am. Family Mut. Ins. Co. v. Allen,* 102 P.3d 333, 342 (Colo.2004). "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co.,* 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462, 466 (Colo.2003)). This tort of bad faith breach of an insurance contract may arise in either a third-party or first-party context, with each context requiring proof of a different standard of conduct. *See Allen,* 102 P.3d at 342.

■ The standard of care in the first-party context, as here, was articulated by the Colorado Supreme Court in *Travelers Insurance Co. v. Savio,* 706 P.2d 1258 (Colo.1985). In *Savio,* the supreme court concluded that, in the first-party context, an insured must prove that (1) the insurer's conduct was unreasonable, and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable. *Savio,* 706 P.2d at 1275; *see also Dale v. Guar. Nat'l Ins. Co.,* 948 P.2d 545, 551 (Colo.1997).

■ A common law tort claim of bad faith includes the entire course of the insurer's conduct until the time of trial. *Dale,* 948 P.2d at 552. Evidence of bad faith conduct that occurs after the filing of the initial complaint is admissible because the evidence is "a continuation of the same difficulties that preceded the filing of the complaint" and is relevant as evidence of a pattern of an insurer's bad faith dealings with an insured. *Southerland v. Argonaut Ins. Co.,* 794 P.2d 1102, 1106 (Colo.App.1990). Therefore, because "bad faith breach of insurance contract encompasses an entire course of conduct," an insurer's ongoing bad faith conduct is relevant to a common law bad faith claim, but does not result in any additional bad faith claims. *See Dale,* 948 P.2d at 552.

In 1987, the General Assembly enacted a statute expressing the *Savio* common law standard for the unreasonable delay or denial of claims. *See* § 10–3–1113, C.R.S.2011; *see also* 8 John W. Grund & J. Kent Miller, *Colorado Personal Injury Practice: Torts and Insurance* § 55.2 (2d ed. 2000) ("[I]n 1987, the Legislature codified [*Savio* ] with a definition of insurance bad faith and a statement of the elements of . . . first-party coverage. . . ."). Under section 10–3–1113(3), for first-party claimants,

> the determination of whether the insurer's delay or denial was unreasonable shall be based on whether the insurer knew that its delay or denial was unreasonable or whether the insurer recklessly disregarded the fact that its delay or denial was unreasonable.

The General Assembly also added a statutory provision to make clear that section 10–3–1113 did not create a new statutory cause of action, but instead merely expressed the common law standard from *Savio.* *See* ch. 65, sec. 1, § 10–3–1114, 1987 Colo. Sess. Laws 424 ("Nothing in this part 11 shall be construed to create a private cause of action based on alleged violations of this part 11 or to abrogate any common law contract or tort cause of action.").

### 2. Sections 10–3–1115 and –1116

In 2008, the General Assembly enacted sections 10–3–1115 and –1116, which became effective as of August 5, 2008. Section 10–3–1115 concerns the "[i]mproper denial of claims." Subsection (1)(a) provides:

> A person engaged in the business of insurance shall not unreasonably delay or deny

payment of a claim for benefits owed to or on behalf of any first-party claimant.

Subsection (2) provides, in relevant part:

[F]or the purposes of an action brought pursuant to this section and section 10–3–1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

Section 10–3–1116 concerns "[r]emedies for unreasonable delay or denial of benefits." Subsection (1) provides that a first-party claimant

whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit.

Subsection (4) provides that the "action authorized in this section is in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future."

■■■ In Colorado, legislation is presumed to be prospective, unless a contrary intent is expressed by the General Assembly. *Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 13 (Colo.1993). Therefore, a statute may operate retroactively only if (1) the General Assembly clearly so intends and (2) it does not violate the constitutional prohibition against retrospective application. *Id.; see* Colo. Const. art. II, § 11. A court need not address the second part of this test concerning retrospectivity if the General Assembly did not clearly intend the challenged statute to apply retroactively. *See In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo.2002).

### III. Analysis

#### A. Preliminary Matters

At the outset, we think it important to reiterate with specificity the narrow question presented in this appeal. In the district court, Kisselman moved for a determination of a question of law on one specific issue: whether sections 10–3–1115 and –1116 applied prospectively to alleged post-effective date acts of unreasonable delay by American Family. In its order, the district court ruled that the Statutes were "inapplicable," relying on the law for common law bad faith claims. On appeal, both parties agree that Kisselman withdrew his argument in the district court regarding retroactivity, and both parties agree that the Statutes apply only prospectively, despite lengthy arguments in both parties' briefs regarding retrospective application of the Statutes. Therefore, we limit our analysis accordingly and state explicitly that the only issue presented on appeal is whether, under the circumstances here, the Statutes apply prospectively to alleged post-effective date acts of unreasonable delay by American Family stemming from Kisselman's pre-effective date claim for insurance benefits.

We must also address a preliminary issue regarding the adequacy of Kisselman's statutory claim for relief in his second amended complaint. In Kisselman's first amended and second amended complaints, he titled his statutory claim as one under section 10–3–1116 only. Section 10–3–1116 concerns "[r]emedies," while section 10–3–1115 concerns the "[i]mproper denial of claims." Therefore, for a pleading to allege claims under both statutory sections, an insured would have to allege a violation of the statutory duty announced in section 10–3–1115 and then also request the remedies enunciated in section 10–3–1116 for a breach of section 10–3–1115. Here, although Kisselman titled his claim for relief under section 10–3–1116 only, he also alleged that American Family "unreasonably delayed and/or denied the benefits owed to [Kisselman]." Therefore, we view Kisselman's allegations in his complaint as sufficient to plead a claim for relief for a violation of section 10–3–1115 and also to seek the statutory remedies under section 10–3–1116. *See* C.R.C.P. 8(a); *Fang v. Showa Entetsu Co., Ltd.,* 91 P.3d 419, 423 (Colo.App.2003) (failure to specify in the complaint the precise statute on which a claim is based does not preclude recovery, provided the defendant is put on notice of the general allegations).

Accordingly, on appeal, Kisselman contends that the district court erred in ruling that sections 10–3–1115 and –1116 were inapplicable to his case. For the reasons set forth below, we agree.

### B. The Statutes

We conclude that, under the circumstances here, the Statutes are applicable to American Family's alleged post-effective date acts of unreasonable delay stemming from Kisselman's pre-effective date claim for benefits for three reasons: (1) the Statutes create a new private right of action in addition to and different from common law bad faith claims; (2) the Statutes announce a standard of liability different from the standard of liability for common law bad faith claims; and (3) the General Assembly intended the Statutes to apply prospectively to all post-effective date conduct of insurers. We examine each of these three reasons in detail below.

### 1. New Private Right of Action

The language in sections 10–3–1115 and 10–3–1116 demonstrates the General Assembly's intent to create an express private right of action for violation of those statutory sections.

Thus, as noted above, section 10–3–1115(1)(a) provides:

A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

Further, section 10–3–1115(2) defines a standard for unreasonableness "for the purposes of an action brought pursuant to this section and section 10–3–1116."

Section 10–3–1116 then expressly creates a private right of action to obtain certain remedies for violations of section 10–3–1115. Thus, section 10–3–1116(1) provides:

A first-party claimant as defined in section 10–3–1115 whose claim for payment of benefits has been unreasonably delayed or denied *may bring an action in a district court* to recover reasonable attorney fees and court costs and two times the covered benefit.

(Emphasis added.) Likewise, section 10–3–1116(4) states that "[t]he action authorized in this section is in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future." Thus, the plain language of the Statutes shows that the General Assembly intended to create an express private right of action for a violation of section 10–3–1115, in addition to and different from common law bad faith claims.

Moreover, the same bill enacting sections 10–3–1115 and–1116 also amended 10–3–1114, as follows:

*Except as provided in sections 10–3–1115 and 10–3–1116,* nothing in this part 11 shall be construed to create a private cause of action based on alleged violations of this part 11 or to abrogate any common law contract or tort cause of action.

(Emphasis added.) Therefore, given the plain language of the Statutes, as well as the clear import of the amendment to section 10–3–1114, we conclude the General Assembly intended to create an express private right of action in sections 10–3–1115 and –1116.

Because we have concluded the plain language of the Statutes clearly creates a new private right of action, we need not consider other interpretive aids. Nonetheless, there is substantial legislative discussion surrounding the passage of the amended Statutes in 2008, and that discussion is consistent with our plain language interpretation. *See Welby Gardens,* 71 P.3d at 995 (discussing legislative history despite concluding that "the plain language of the statute is clear"). In looking to legislative history, we "accord substantial weight to the sponsors' statements concerning a bill's purpose." *Meyerstein v. City of Aspen,* 282 P.3d 456, 466 (Colo.App. 2011) (quoting *People v. Miller,* 97 P.3d 171, 174 (Colo.App.2003)).

Here, Speaker Romanoff, who was the sponsor of the bill that was eventually enacted as sections 10–3–1115 and –1116, made the following remarks about the purpose of the bill when describing it to the House Committee on Business Affairs and Labor:

What the proposal does is increase the penalties on companies that unreasonably delay or deny payment by offering consumers in those situations two different paths. One that would take them to the division of insurance, which would have under this proposal increased fining authority. And the other path would take those consumers to court, *by giving them a*

*private right of action beyond the remedies in existing law . . . .*

Hearings on H.B. 1407 before the H. Comm. on Business Affairs & Labor, 66th Gen. Assem., 2d Sess. (Apr. 24, 2008) (emphasis added).

Therefore, the legislative history confirms our plain language analysis that the Statutes created a new private right of action in addition to and different from an action alleging breach of the common law duty of good faith and fair dealing.

### 2. New Statutory Standard of Liability

 We also conclude that the Statutes' language and legislative history show that the General Assembly intended to impose on insurers a statutory standard of liability in addition to and different from that required to prove a claim for breach of the common law duty of good faith and fair dealing, as expressed in section 10–3–1113.

Section 10–3–1113(1), which expresses the common law bad faith standard, provides:

In any civil action for damages *founded upon contract, or tort, or both* against an insurance company, the trier of fact may be instructed that the insurer owes its insured the duty of good faith and fair dealing, which duty is breached if the insurer delays or denies payment without a reasonable basis for its delay or denial.

(Emphasis added.) Section 10–3–1113(3) expresses the standard for common law bad faith claims brought by first-party claimants, as follows:

Under a policy of first-party insurance, the determination of whether the insurer's delay or denial was reasonable shall be based on whether the insurer *knew* that its delay or denial was unreasonable or whether the insurer *recklessly disregarded* the fact that its delay or denial was unreasonable.

(Emphasis added.) Therefore, in the first-party claimant context, a plaintiff must allege and prove knowledge or recklessness on the part of the insurer to establish that an insurer's delay or denial was unreasonable for a common law bad faith claim to succeed. *See Savio,* 706 P.2d at 1275.

In contrast, the Statutes, as pertinent here, do not provide a similar standard of liability for insurers, nor do they repeat the first-party standard of liability found in section 10–3–1113(3). Instead, section 10–3–1115(1)(a) provides:

A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

Section 10–3–1115(2), in turn, provides a definition for reasonableness, as follows:

*Notwithstanding section 10–3–1113(3),* for the purposes on an action brought pursuant to this section and section 10–3–1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a *reasonable basis* for that action.

(Emphasis added.)

The statutory language in section 10–3–1115 imposes a standard of liability on insurers different from that imposed by the common law as expressed in section 10–3–1113, in that it expressly deletes the requirement that an insurer "knew that its delay or denial was unreasonable or . . . the insurer recklessly disregarded the fact that its delay or denial was unreasonable." *See* Erin Robson Kristofco, *CRS §§ 10–3–1115 and –1116: Providing Remedies to First–Party Claimants,* 39 Colo. Law. 69, 70–71 (July 2010). To interpret the Statutes any other way would render provisions of the Statutes meaningless, and we must avoid interpretations that render statutory language a nullity. *See* § 2–4–201(1)(b), C.R.S.2011 ("The entire statute is intended to be effective."); *Indus. Claim Appeals Office v. Orth,* 965 P.2d 1246, 1254 (Colo.1998) (when construing different statutory provisions concerning the same topic, we must give effect to the legislative purpose of all such provisions and avoid constructions that render any such provision superfluous or a nullity).

Thus, the reasonableness standard in section 10–3–1115(1)(a) cannot be read as simply restating the common law standard for reasonableness set out in section 10–3–1113(3), which requires a plaintiff to prove an insurer acted with knowledge or recklessness. Otherwise, the "reasonable basis" standard in

section 10–3–1115(2) would be a nullity, as would the prefatory language in that subsection, stating that the standard for a statutory violation in a first-party context is to be applied "[n]otwithstanding section 10–3–1113(3)." Such an interpretation would also nullify section 10–3–1115 as a whole, because it would mean that the General Assembly simply restated the common law standard for bad faith in section 10–3–1115, which it had already expressed in section 10–3–1113. *See Orth*, 965 P.2d at 1254. Moreover, such an interpretation ignores the fact that the Statutes created a new private right of action for insureds in addition to and different from a claim for breach of the common law duty of good faith and fair dealing, as discussed above.

Accordingly, we conclude the General Assembly intended the Statutes to impose a new statutory duty on insurers not to "unreasonably delay or deny payment of a claim for benefits owed," which duty would be breached if the insurer had no "reasonable basis" to delay or deny the claim for benefits. *See* § 10–3–1115(1)(a), (2). The question as to what the "reasonable basis" standard actually means has not been argued, is not before us on appeal, and is not necessary to our analysis. All that matters, in our view, is that the Statutes impose on insurers a statutory standard of liability that is in addition to and different from the common law standard expressed in section 10–3–1113.

And, once again, the legislative history shows that our plain language interpretation is consistent with the General Assembly's legislative intent. *See Welby Gardens*, 71 P.3d at 995.

During the hearing before the House Committee of Business Affairs and Labor, Representative Mitchell raised concerns that the bill's reasonableness standard was potentially ambiguous:

> I know that in commercial agreements that I'm familiar with . . . we would often use a good faith and fair dealing provision in most contracts. Have you contemplated something like that? Reasonableness,

seems to me, it's very fuzzy, and it's going to ultimately have the unintended consequence of potentially leading in to more litigation, not less. . . .

Hearings on H.B. 1407 before the H. Comm. on Business Affairs & Labor, 66th Gen. Assem., 2d Sess. (Apr. 24, 2008). In response, Speaker Romanoff, the bill's sponsor, addressed Representative Mitchell's concerns, and, in so doing, also discussed the bill's reasonableness standard with reference to the common law standard of good faith and fair dealing:

> Representative Mitchell, you're right. There is an existing standard in the law that requires an insurer to uphold the duty of good faith and fair dealing. But, the standard at least as caselaw has defined it is, a breach of that duty occurs when the insurer either knew that its delay or denial was unreasonable, which is hard for anybody to prove what the company or anyone actually knew, or when the insurer recklessly disregarded the fact that its delay or denial was unreasonable. And, again, I think, reckless, willful, wanton, knowing, those standards are pretty high.

*Id.* Later, Speaker Romanoff stated, "I believe the existing standard is too high," further clarifying that the purpose of the bill was to announce a standard of conduct in the first-party context in addition to and less onerous than the common law standard of good faith and fair dealing. *See In re Marriage of Davisson*, 797 P.2d 809, 810 (Colo. App.1990) (determining legislative intent based upon ordinary meaning of statutory language and legislative history).

The next question is whether, under the circumstances here, the Statutes apply to American Family's post-effective date acts of alleged unreasonable delay.

### 3. Prospective Application

Both parties concede, and we agree, that the Statutes are, and were intended by the General Assembly, to be applied prospectively.[1] However, American Family contends that the Statutes are inapplicable to its post-

---

1. Accordingly, we need not address whether the statutes are unconstitutionally retrospective. *See*

*DeWitt*, 54 P.3d at 854.

effective date conduct because Kisselman's injury, and his claim against it for delay and denial of benefits, occurred and accrued before the Statutes' effective date of August 5, 2008. Specifically, American Family contends that Kisselman's claim under the Statutes "amounts to nothing more than an attempt to portray each alleged instance of American Family's continuing delay following August 5, 2008 as a separate and distinct *breach of the duty of good faith and fair dealing* actionable under the Statute." (Emphasis added.) In contrast, Kisselman argues that the Statutes apply prospectively to American Family's post-effective date acts of alleged unreasonable delay. We agree with Kisselman.

In its order ruling that sections 10–3–1115 and –1116 were "inapplicable," the district court relied on the federal district court's decision in *James River*, as follows:

> [American Family] cites [*James River*]. In *James River*, the insured attempted to circumvent the retroactive application problem by arguing that C.R.S. § 10–3–1116 should apply because new acts of unreasonable delay by the insured took place after the adoption of C.R.S. § 10–3–1116. Judge Arguello rejected this argument reasoning that while '[c]ourts applying Colorado law have held that an insurer's continuing pattern of unreasonable behavior may be relevant evidence of a bad faith claim[,] ... these same courts recognize that an insurer's continued refusal to cooperate with an insured cannot serve as the basis for a separate bad faith claim if one has already been plead[ed].'

The district court likened the situation in *James River* to the present case, as follows:

> As in *James River*, the claim at issue here accrued before the Statutes went into effect and the alleged continuation of any unreasonable delay or denial of payment does not render the claim cognizable.

Similarly, in its order denying Kisselman's motion for reconsideration, the district court stated:

> While [Kisselman] points to "new conduct" (i.e., new acts of allegedly unreasonable delay), the fundamental legal defect remains: [Kisselman's] argument is prem-

ised on a continuing breach originating before the effective date of the legislation.

To be sure, both the district court and the court in *James River* correctly stated the law as it pertains to common law bad faith claims. And, in its brief on appeal, American Family's statement that "Colorado does not recognize a 'continuing violation' or 'ongoing' bad faith claim" is accurate, insofar as it pertains to common law bad faith claims. *See Dale*, 948 P.2d at 552; *Harmon v. Fred S. James & Co. of Colorado, Inc.*, 899 P.2d 258, 261 (Colo.App.1994). In making these statements, however, the district court, the court in *James River*, and American Family all seemingly assume that a claim brought under sections 10–3–1115 and 10–3–1116 and a common law bad faith claim are the same. As our discussion above makes clear, they are not. Instead, the Statutes create a new private right of action for insureds in addition to and different from a common law bad faith claim. And the insured's burden of proving that statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing. *See* Kristofco, at 71. Accordingly, although cases discussing common law bad faith claims may be helpful, our analysis must focus on the statutory language found in sections 10–3–1115 and –1116 to give effect to the intent of the General Assembly. *See Rodriguez*, 914 P.2d at 925 ("[O]ur primary goal is to give effect to the intent of the General Assembly.").

▮ Here, section 10–3–1115(1)(a) provides that a "person engaged in the business of insurance *shall not unreasonably delay or deny payment* of a claim for benefits owed to or on behalf of any first-party claimant." (Emphasis added.) The clear import of this language shows that the General Assembly intended to prohibit *conduct* by insurers in their handling of claims for benefits owed to their insureds. Therefore, after the Statutes' effective date of August 5, 2008, insurers are statutorily prohibited from engaging in certain conduct—namely, acts of unreasonable delay or denial of payment of benefits, as defined in the statute—stemming from a claim for benefits. It follows that an insurer breaches this duty if it engages in post-

effective date acts of unreasonable delay or denial regardless of when an insured originally made a claim for benefits under his or her insurance policy.

Further, nothing in the Statutes suggests, as American Family contends, that insurers may unreasonably delay or deny payment of a pre-effective date claim for benefits owed after the Statutes' effective date and thereby avoid the proscriptions and remedies set forth in the Statutes. Taken to its logical extreme, American Family's argument would mean that an insured who made a claim for benefits on August 4, 2008, would be foreclosed from bringing an action under the Statutes for an insurer's acts of unreasonable delay or denial starting on August 5, 2008 and continuing thereafter. In our view, this result would be contrary to the intent of the General Assembly. *See State v. Nieto,* 993 P.2d 493, 505 (Colo.2000) ("In interpreting [a] statute, we must presume that the General Assembly intended a just and reasonable result and must seek to avoid an interpretation that leads to an absurd result."); *Thurman,* 895 P.2d at 1055 (court's primary goal is to effectuate the intent of the General Assembly).

Thus, we conclude the plain language of sections 10–3–1115 and –1116 demonstrates that the General Assembly intended the Statutes to apply prospectively to an insurer's acts of unreasonable delay or denial that occur after August 5, 2008, regardless of when the original claim for benefits was made.

Last, we briefly address certain procedural concerns discussed by the court in *James River.* In *James River,* the court expressed reservations about permitting claims for post-effective date acts of unreasonable delay because, if the court held "that each new fact brought out during discovery created the basis for a new and separate breach of a GFFD [good faith and fair dealing] claim, a pleading and docketing quagmire would ensue." As already discussed above, claims brought under sections 10–3–1115 and –1116 are not common law good faith and fair dealing claims. Instead, sections 10–3–1115 and –1116 announce a new private right of action which, in the view of the General Assembly, was necessary to curb perceived abuses in the insurance industry, despite any pleading or docketing problems that may ensue. Our task in construing a statute is to determine and to give effect to the intent of the General Assembly, not to second-guess its judgment. *Walker v. People,* 932 P.2d 303, 309 (Colo.1997). We express no opinion on the wisdom or propriety of the Statutes, but seek only to give effect to them, and, in so doing, we presume that the General Assembly weighed the conflicting policy concerns and made a judgment that was just and reasonable under the circumstances. *See* § 2–4–201(1)(c), C.R.S.2011 ("In enacting a statute, it is presumed that . . . [a] just and reasonable result is intended."); *Colorado Soc'y of Cmty. & Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707, 712 (Colo.1987) (courts do not "weigh the propriety" of legislation).

## IV. Conclusion

In sum, we hold that the Statutes apply to Kisselman's allegations of American Family's post-effective date acts of unreasonable delay or denial of payment of his claim for benefits. Accordingly, we reverse the district court's order that sections 10–3–1115 and –1116 were "inapplicable" to Kisselman's case and remand with directions for the district court to permit Kisselman's statutory claim to go forward. On remand, Kisselman may assert his claim under sections 10–3–1115 and –1116, but it is necessarily limited and narrow: it applies only to post-effective date conduct of American Family, and specifically whether any such conduct unreasonably delayed or denied payment of a claim for benefits owed to or on behalf of Kisselman. Thus, Kisselman may not base his statutory claim on any alleged pre-effective date acts of American Family. To the extent other evidentiary and instructional issues arise in order to effectuate our holding, they are more appropriately addressed in the first instance by the parties and the district court on remand. *See, e.g.,* Kristofco, at 71 ("An instruction regarding duplicative recovery may be necessary for juries contemplating damages pursuant to the statutes.").

Further, we also express no opinion on the substantive merits of Kisselman's claim, nor do we express any opinion regarding the merits of American Family's motion for summary judgment currently stayed in the district court. The district court will still need to address that motion on remand. We hold only that, under the very limited circumstances here, the district court erred in ruling that sections 10–3–1115 and –1116 were "inapplicable" in this case.

The district court's order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge RICHMAN and Judge STERNBERG * concur.