Opinion by JUDGE RICHMAN
¶ 1 In this action involving a special metropolitan district, intervenor-appellant Landmark Towers Association, Inc. (Landmark), appeals the district court's denial of its motion to set aside the order which created the Marin Metropolitan District (District), appellee, and its related order awarding costs to the District and to a bond issuer for the district, Colorado Bondshares (Bondshares). We affirm.
I. Background
¶ 2 In 2007, a developer and five affiliated individuals (organizers) commenced proceedings under section 32-1-101 to - 1807, C.R.S.2013, to form a special metropolitan district within the boundaries of Greenwood Village. The organizers filed a service plan with the municipality and the city council approved it pursuant to section 32-1-204.5, C.R.S.2013, on August 27, 2007.
¶ 3 On September 5, 2007, a petition for organization was filed with the Arapahoe County District Court pursuant to section 32-1-301, C.R.S.2013. The court set the petition for hearing on October 4, 2007. Notice of the hearing was published in the local newspaper, and the Clerk of the Court issued a notice of the hearing on September 13, 2007.
¶ 4 On October 4, 2007, the district court entered an order directing an organizational election be held on November 6, 2007. The election was held, and on December 6, 2007, the district court entered findings, and an order and decree creating the special district. The order included within the special district the Landmark Towers condominium properties which were then under construction. Approximately 130 persons had contracted to purchase condominiums therein, but no sales had been completed as of December 2007.
¶ 5 According to Landmark, a homeowners' association comprised of Landmark Towers condominium owners, it was not until several years after the District was formed that the owners discovered facts indicating *622 that the District had been organized through alleged misrepresentations to the municipality and an asserted fraud on the court. In 2012, Landmark intervened and moved pursuant to C.R.C.P. 60(b)(2), (3), and (5) to set aside the December 2007 order for alleged fraud on the court, a lack of subject matter jurisdiction to approve the special district, and invalidity of the order due to lack of due process.
¶ 6 The court held a three-day evidentiary hearing and by written order entered on December 17, 2012, dismissed Landmark's motion. The court concluded that it was barred from setting aside the order by section 32-1-305(7), C.R.S.2013. That subsection provides:
If an order is entered declaring the special district organized, such order shall be deemed final, and no appeal or other remedy shall lie therefrom. The entry of such order shall finally and conclusively establish the regular organization of the special district against all persons except the state of Colorado in an action in the nature of quo warranto commenced by the attorney general within thirty-five days after entry of such order declaring such special district organized and not otherwise. The organization of said special district shall not be directly or collaterally questioned in any suit, action, or proceeding except as expressly authorized in this subsection (7).
¶ 7 The court interpreted the statute, giving weight to its plain meaning, as follows:
The language chosen by the Legislature in adopting C.R.S. § 32-1-305(7) is clear and unambiguous-once the final order is signed only the attorney general may challenge the order, and no appeal or other remedy is available.
¶ 8 The court also determined that the relief Landmark sought-to set aside the order based on fraud on the court, or because the order was void, and because there was a lack of due process-all fell within the phrase "other remedy" as used in the statute, and the relief requested was not available. As the court explained, "[f]or the Legislature to choose to deprive parties of the right to appeal an order after it becomes final is extraordinary and demonstrates the breadth of the prohibition the Legislature intended."
¶ 9 Thus, the court acknowledged that it was required to deny Landmark's motion on the statutory basis alone.
¶ 10 Nevertheless, the court went on to address Landmark's other arguments. With respect to Landmark's argument that it had been denied due process, the court mentioned that "there is little doubt, based upon the evidence presented to this court to date, that efforts were made [to] prevent the individuals who had entered into purchase contracts from finding out about the developer's intentions and efforts to create the District and the related tax liability which would burden the property they were purchasing." However, the court clarified that regardless of any efforts to prevent individuals from learning about the formation of the District, the Legislature clearly chose to deprive parties of the right to appeal or attack an order after it became final.
¶ 11 With respect to the order being void and therefore subject to being set aside under C.R.C.P. 60(b)(3), the court stated:
It appears to the Court that Landmark has established that the creation of the District was never approved by taxpaying electors [,] which is a prerequisite to the court's December 17, 2007 Order. Because such would render the order void there would be no Rule 60(b)(3) time bar.
The court again clarified that, nonetheless, "the court lacks jurisdictional authority to enter an order finding the December 17, 2007 Order void."
¶ 12 With respect to the issue of Landmark's timely filing of its motion under C.R.C.P. 60(b)(5), the court remarked that although the evidence presented to date strongly suggested that fraud had occurred, the time bar of C.R.C.P. 60(b)(2) would apply to preclude relief. And again the court clarified that it was jurisdictionally unable to reach the issue.
¶ 13 In a separate order, the court awarded $5,905.36 in costs to the District and to the other intervenor, Bondshares, as costs necessarily incurred because of the litigation *623 and for the proper preparation for trial. This appeal followed.
II. Statute Providing for Organization of Special Districts
¶ 14 In order to address Landmark's arguments, we first set forth pertinent provisions of the statutes providing for the formation of special districts.
¶ 15 The legislative declaration pertaining to special districts provides that the organization of special districts providing the services and having the purposes, powers, and authority provided in Article 32 will serve a public use and will promote health, safety, prosperity, security, and general welfare of the inhabitants of such districts. § 32-1-102(1), C.R.S.2013. Special districts have the power to borrow money and incur indebtedness by the issuance of bonds, section 32-1-1001, C.R.S.2013, to levy taxes and collect revenues whenever indebtedness has been incurred, and to create a fund for meeting the obligations of the district for bond repayment and interest, section 32-1-1101, C.R.S.2013.
¶ 16 In order to form a special district, the persons proposing the organization must prepare and file a service plan setting forth the contents specified in section 32 -1-202. Pursuant to section 32-1-203, C.R.S.2013, the board of county commissioners of each county which has territory included within the proposed special district shall review the plan according to criteria set forth in the statute, unless the "proposed special district ... is contained entirely within the boundaries of a municipality." § 32-1-203(1). If the boundaries of the special district "are wholly contained within the boundaries of a municipality," the district may not be organized except upon adoption of a resolution of approval by the governing body of the municipality. § 32-1-204.5.
¶ 17 If the special district is subject to review by the county commissioners, a public hearing must be held pursuant to section 32-1-204, C.R.S.2013.[1] Section 32-1-204(1.5) provides that not more than thirty nor less than twenty days before the hearing, "the petitioners for the organization of the special district shall send letter notification of the hearing to the property owners within the proposed special district as listed on the records of the county assessor on the date requested unless the petitioners represent one hundred percent of the property owners." The hearing shall be open to the public, and all interested parties, as defined by the statute, shall be given an opportunity to be heard. § 32-1-204.5(3). Within twenty days after completion of the hearing, the board shall advise the petitioners in writing as to its action on the proposed service plan. Id .
¶ 18 If the petition for organization is approved, a petition for organization of the special district may be filed in any district court pursuant to the provisions of section 32-1-301, accompanied by the resolution of the governing municipality approving the service plan. § 32-1-205(1), C.R.S.2013. The approved service plan and resolution of approval shall be incorporated into the court order establishing the special district "after all other legal procedures for the organization of the proposed special district have been complied with." § 32-1-205(2), C.R.S.2013.
¶ 19 The legal procedures required to obtain court approval, insofar as pertinent to this case, are set forth in sections 32-1-301, - 304 and - 305, C.R.S.2013.
¶ 20 Section 32-1-301 requires that the persons proposing to organize the special district file a petition for organization with the district court vested with jurisdiction for the county in which the special district is located. The petition must be signed by "not less than thirty percent or two hundred of the taxpaying electors of the proposed special district, whichever number is the smaller." § 32-1-301(1).
¶ 21 The definitional section of the statute provides that a taxpaying elector means an "eligible elector" who, or whose spouse, *624 "owns taxable real or personal property within the special district or the area to be included in ... the special district, whether the person resides within the special district or not." § 32-1-103(23)(a), C.R.S.2013. Taxable property means real property subject to general ad valorem taxes. § 32-1-103(22), C.R.S.2013. The statutory definition also provides that "[a] person who is obligated to pay taxes under a contract to purchase taxable property within the special district shall be considered an owner within the meaning of this subsection." § 32-1-103(23)(b), C.R.S.2013.[2]
¶ 22 Section 32-1-304 provides that "immediately after" the filing of the petition for organization with the court, it shall set a hearing on a date not less than twenty nor more than forty days after the filing. The clerk of the court shall cause notice by publication to be made of the pendency of the petition, the purposes and boundaries of the special district, and the time and place of the hearing. The notice must be mailed by the court clerk to the board of county commissioners, and to "each party entitled to notice pursuant to section 32 -1-206(2)." Id . The parties entitled to notice under that subsection are any "party [that] appeared and presented its objections before the board of county commissioners." § 32-1-206(2), C.R.S.2013. The notice to be issued by the court clerk shall include a general description of the boundaries of the proposed special district and information explaining procedures for filing a petition for exclusion of territory from the special district. § 32-1-304.
¶ 23 Section 32-1-305 sets forth provisions pertaining to the conduct of the court hearing.
¶ 24 First, the court must ascertain, from the "evidence which may be adduced," that the required number of taxpaying electors of the proposed district have signed the petition. § 32-1-305(1), C.R.S.2013. If the court determines the petition has not been signed in conformity with the requirements, it shall dismiss the proceedings and assess costs against the signers. "No appeal or other remedy shall lie from an order dismissing said proceedings." § 32-1-305(2), C.R.S.2013.
¶ 25 Second, the court may hear any petition filed by an owner of real property seeking to have his or her property excluded from the special district, and determine whether, "in the best public interest," the property should be excluded from the special district. § 32-1-305(3), C.R.S.2013.
¶ 26 Third, if it appears upon hearing that the petition has been signed and presented in conformity with the statute, and that the allegations of the petition are true, the court shall direct that the question of the organization of the district be submitted at an election to be held for that purpose in accordance with the provisions of the Uniform Election Code. § 32-1-305(4), C.R.S.2013. At such election, the voter shall vote for or against the organization of the special district and for five electors who shall constitute the board of the district, if organized. § 32-1-305(5), C.R.S.2013.
¶ 27 If a majority of the votes at the election are in favor of the organization, and the court determines the election was held in accordance with the provisions of the Uniform Election Code, the court "shall declare the special district organized and give the special district the corporate name designated in the petition." § 32-1-305(6). Thereupon, the special district shall be a quasi-municipal corporation and a political subdivision of the state of Colorado with all the powers thereof. Id.
¶ 28 Furthermore, *625 section 32-1-305(7), C.R.S.2013, as it existed in 2012,[3] provided as follows:
If an order is entered declaring the special district organized, such order shall be deemed final, and no appeal or other remedy shall lie therefrom. The entry of such order shall finally and conclusively establish the regular organization of the special district against all persons except the state of Colorado in an action of the nature of quo warranto commenced by the attorney general within thirty-five days after entry of such order declaring such special district organized and not otherwise. The organization of said special district shall not be directly or collaterally questioned in any suit, action, or proceeding except as expressly authorized in this subsection (7).
III. Landmark's Claims
¶ 29 Landmark's claims that the District was formed with a lack of due process, pursuant to a fraud on the court, or through a court order that was void or voidable, essentially arising from asserted noncompliance with the provisions of the statute, or alleged misrepresentations by the organizers that they complied with the statute. The asserted noncompliance relates to an alleged failure by the organizers to: (1) provide notices as required by the statute; (2) have a sufficient number of taxpaying electors sign the organizational petition; and (3) have a proper election. The alleged misrepresentations relate to the organizers' statement to the city council and the court that the statutory provisions had been complied with and notice had been given to the putative condominium owners.
¶ 30 Landmark contends that, regardless of section 32-1-305(7), the district court (1) has inherent power to vacate a void judgment notwithstanding a statutory time bar; (2) has jurisdiction to set aside a previously entered order based on fraud on the court; (3) has a duty to provide constitutional due process, providing jurisdiction to set aside an order that is void for lack of notice and an opportunity to be heard. We disagree with these contentions. We also disagree that the court erred in awarding costs.
IV. Standard of Review
¶ 31 The proper interpretation of a statute is a question of law that we review de novo. See Kisselman v. Am. Family Mut. Ins. Co., 292 P.3d 964, 969 (Colo.App.2011). Our primary goal in statutory interpretation is to determine and give effect to the intent of the legislature. Id. We look first to the plain and ordinary meaning of the statutory language. Id. If the language of the statute is plain and its meaning is clear, it must be applied as written, and we need not resort to any other aids of statutory interpretation. In re Estate of Holmes, 821 P.2d 300, 303 (Colo.App.1991).
¶ 32 The determination of issues under Landmark's C.R.C.P. 60(b) motion rests in the sound discretion of the trial court. Sterling Radiator Co. v. Siegelman, 32 Colo.App. 115, 513 P.2d 1067, 1068 (1973). Where there is evidence supporting the trial court's final determination, and where no abuse of discretion appears, we will not disturb the determination. Id .
V. Analysis
A. Motion to Set Aside Order
¶ 33 We agree with the district court that it was statutorily barred from setting aside the order by section 32-1-305(7). Even if we were to conclude that Landmark's factual contentions could be resolved in its favor, section 32-1-305(7) controls and is dispositive.
¶ 34 The statute in question is specific in providing for review of the action by the district court only in a very narrow and time-constrained procedure which did not occur here. First, section 32-1-305(7) declares that once an order establishing a special district is entered, it "shall be deemed final, and no appeal or other remedy shall lie therefrom." Second, it further provides that the entry of such an order "shall finally and conclusively establish the regular organization *626 of the special district against all persons except the state of Colorado in an action in the nature of quo warranto commenced by the attorney general within thirty days after entry of such order declaring such special district organized and not otherwise." And third, it mandates that the organization of the district "shall not be directly or collaterally questioned in any suit, action, or proceeding except as expressly authorized in this subsection (7)." The plain language of the three portions of subsection (7) all preclude the review Landmark seeks.
¶ 35 In applying a previous version of this statute in Burns v. Dist. Court, 144 Colo. 259, 268, 356 P.2d 245, 251 (1960), our supreme court dismissed a petition seeking to declare "null and void" the judicial proceedings that established the South Suburban Recreational Park District.[4] In rejecting the challenge to the district, the court held it is "settled doctrine that the validity of a de facto municipal or quasi-municipal corporation may not be questioned in an independent action by private citizens." Id . (citing Enos v. Dist. Court, 124 Colo. 335, 348-49, 238 P.2d 861, 868-69 (1951) ). Rather, the court held, "under this statute quo warranto is available only to the people on relation of the Attorney General." Id . at 266, 356 P.2d at 250. The court further held that the General Assembly may validly limit the time period within which the constitutionally guaranteed remedy is available, and concluded that the time restriction contained in the statute was not so unreasonably short as to destroy the substance of the remedy. Id .
¶ 36 The opinion expressed reasons why the legislature created such an expedited process. First, the court noted, "[c]learly, the General Assembly was endeavoring to expedite the procedure contemplated by the entire act, and to that end the limitation relative to judicial review was made a feature of the law." Id . at 267, 356 P.2d at 250. Next, interpreting an earlier statutory version, the court emphasized "the purpose of the General Assembly to work expedition in the determination of questions arising out of the administration of the act." Id . Further, the court determined that the thirty-day limitation was not unreasonably short "in view of the need for accelerating contract negotiations and the taking of other action looking to accomplish[ ] the purposes of the district, free of the fear of subsequent attack of the district's legal existence." Id . at 268, 356 P.2d at 250.
¶ 37 As a matter of law, special statutory provisions control over general procedural rules and statutes of general application. Air Pollution Control Comm'n v. Dist. Court, 193 Colo. 146, 150, 563 P.2d 351, 354 (1977). See Lloyd A. Fry Roofing Co. v. State Dep't. of Health Air Pollution Variance Bd., 191 Colo. 463, 473, 553 P.2d 800, 808 (1976) (any inconsistency between special statute and rule of civil procedure is resolved in favor of the statutory section); Brown v. Hansen, 177 Colo. 39, 41, 493 P.2d 1086, 1087 (1972) (rules of civil procedure do not apply where special statutory proceeding sets forth remedies); City of Westminster v. Dist. Court, 167 Colo. 263, 266, 447 P.2d 537, 539 (1968) ("The statutory language makes it clear that no discretion is afforded the annexing municipality. The statute is mandatory and therefore, absent a finding of inapplicability or unconstitutionality, the district court lacked jurisdiction to order the City of Westminster to disobey the clear mandate of the statute."). Thus, section 32-1-305(7), a more specific statute addressing challenges to the formation of special districts, controls over the general procedural rules upon which Landmark relies.
¶ 38 Landmark contends that courts of this state have an inherent power to set aside a judgment procured through fraud, or through a deprivation of due process. We do not disagree with this proposition as a general matter. But, where the authority of the court to enter an order in the first place emanates solely from a statutory grant from the legislature, as is the case with the organization of a special district, and that statutory grant contains a limitation on the power of the court to review the order once it is entered, we must defer to the legislative *627 determination to place a limit on the review of such an order.
¶ 39 The limitation on the power to challenge special districts, which are quasi-municipal corporations, was explained in Burns as follows:
Municipal corporations of the character here involved are created only upon the authority of the state by legislative enactment, and are, if created thereunder, solely for public and not private purposes, and become an arm of the state. The right to exist as such a corporation is derived solely from the state and any action aimed to attack its legal existence after it becomes at least a de facto corporation must be confined to the state through its official representative ...
144 Colo. at 268, 356 P.2d at 251 (quoting Enos, 124 Colo. at 347, 238 P.2d at 868 ).
¶ 40 Finally, we note that in the district court Landmark did not challenge the facial constitutionality of the provisions of section 32-1-305(7), and does not do so before us. We therefore conclude that the reasoning in Burns applies equally to this case and therefore we follow its mandate.
¶ 41 Because the jurisdictional issue is dispositive, we need not reach Landmark's contentions that the court's order was void ab initio or that fraud tainted the order approving the District, rendering it void. Nor need we address the trial court's dicta regarding what the evidence might show in regard to such contentions. Based on this ruling, we need not decide if Landmark's motion was timely under C.R.C.P. 60(b).
¶ 42 To the extent that Landmark argues the application of the statute in these circumstances constitutes a deprivation of its right to due process, we disagree. Although a different division of this court concluded that a limitations period applicable to a relinquishment proceeding may not apply where the adoption judgment is void arising from improper notice, we find the facts in the instant case distinguishable. See In re C.L.S., 252 P.3d 556, 560 (Colo.App.2011).
¶ 43 First, as noted above, the statute that bars Landmark's challenge is not merely a statute of limitations providing for a limited time period within which to mount a challenge, but rather a jurisdictional bar to an attack on the formation of the district.
¶ 44 Second, the statutory notice provisions at issue in C.L.S. were evaded, whereas in this case we conclude the statute's notice requirements were met. The relinquishment statute allowed notice by publication only if the putative father had not been identified. §§ 19-5-103.5(2)(b); 19-5-103.7(3)(a)(1), C.R.S.2013. The mother, however, contrary to the statutory requirement, intentionally misrepresented that she did not know the father's identity and whereabouts to avoid notifying him of the relinquishment proceeding, and fraudulently omitted the father's name from the court documents, depriving him of actual notice. 252 P.3d at 559. The division held that because the notice requirements had not been met, the judgment was void and the limitations period did not apply.
¶ 45 By contrast, we conclude that the statutory notice requirements contained in the special district statute were met in this case, and there was no denial of due process caused by a failure to comply with the notice requirements.
B. Notice Requirements
¶ 46 Notice of the public hearing on the proposed service plan before the county commissioners, or presumably before the municipality, may be made by publication by the governing authority, and such publication shall constitute "constructive notice." § 32-1-204(1). There is no dispute that Greenwood Village provided such notice by publication in this case.
¶ 47 Letter notification of the hearing must be made to property owners within the proposed special district listed on the public records of the county assessor on the date requested. § 32-1-204(1.5). However, there is no dispute that there were no property owners within the proposed special district at the time the service plan was submitted to Greenwood Village.
¶ 48 Notice of the court hearing on the petition to approve the proposed special district must be published by the clerk of the court. § 32-1-304. There is no dispute that *628 the Arapahoe County District Court Clerk published the scheduled hearing on the proposed special district.
¶ 49 Thus, because the statutory provisions regarding notice were met, we find no violation of Landmark's right to due process arising from lack of notice.
C. Costs
¶ 50 Landmark contends that the court erred by awarding costs to appellees under C.R.C.P. 54(d), because the rules of civil procedure do not apply to special statutory proceedings, such as those pursuant to Title 32, where such proceedings are inconsistent or in conflict with the applicable statute. Landmark relies on C.R.C.P. 81(a) ("These rules do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute."). Landmark also contends that C.R.C.P. 54(d) does not apply where a statute makes express provision for costs: "Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." We are not persuaded.
¶ 51 Such prevailing party costs are awardable under C.R.C.P. 54(d) unless there is a statute or rule that specifically prohibits an award of costs. C.R.C.P. 54(d) ("Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs...."). "In construing C.R.C.P. 54(d), the supreme court has held that unless there is a statute or rule that specifically prohibits an award of costs, trial courts may exercise their discretion to award any reasonable costs to a prevailing party." Mackall v. Jalisco Int'l, Inc., 28 P.3d 975, 977 (Colo.App.2001) (citing Rossmiller v. Romero, 625 P.2d 1029, 1030 (Colo.1981) ).
¶ 52 "A prevailing defendant may recover the reasonable and necessary costs it incurred in defending litigation." Valentine v. Mountain States Mut. Cas. Co., 252 P.3d 1182, 1186-87 (Colo.App.2011). See § 13-16-105, C.R.S.2013. "Absent a prohibition in a statute or rule, the district court has considerable discretion in determining whether to award costs and what amount to award." Valentine, 252 P.3d at 1187. "We will reverse a district court's award of costs only upon a showing that it clearly abused its discretion by acting in a manner that was manifestly arbitrary, unreasonable, or unfair." Id . Accord Archer v. Farmer Bros. Co., 90 P.3d 228, 230 (Colo.2004).
¶ 53 Landmark points to no statute or rule which specifically prohibits an award of costs, and we likewise find none. In fact, Landmark concedes that "the legislature did not provide for taxation of any costs against a property owner or other party who sought to invoke [its] rights under Title 32." Thus, the trial court properly exercised its discretion by awarding reasonable costs to the prevailing party. Mackall, 28 P.3d at 977.
¶ 54 Landmark next contends that the cost award in favor of the District and Bondshares was in error because the costs were incurred by Bondshares, not the District. The court allowed Bondshares to intervene on March 14, 2012, and Bondshares became a party at that time. Because Bondshares and the District share many of the same interests in the outcome of the litigation, both parties could properly be considered prevailing parties. We discern no abuse of discretion.
¶ 55 Landmark finally contends that the court abused its discretion by awarding costs to the District because of "the merit of Landmark's contribution, the novelty of the issues, the necessity of the intervention, and the public interest." On the record before us, we are unable to conclude that the court "clearly abused its discretion by acting in a manner that was manifestly arbitrary, unreasonable, or unfair." Valentine, 252 P.3d at 1187.
VI. Conclusion
¶ 56 The order denying Landmark's motion to set aside the December 2007 order is *629 affirmed. The order awarding costs to the District and Bondshares is also affirmed.
JUDGE CASEBOLT and JUDGE VOGT* concur.

The statute does not expressly state that the procedural requirements of section 32-1-204, C.R.S.2013, must be met if the district is "wholly contained within the boundaries of a municipality" as is the case here, but it appears that Greenwood Village intended to follow those procedural requirements.

The statute defines "eligible elector" as a person who at the designated time or event is registered to vote pursuant to the Uniform Election Code; is a resident of the special district, or the area to be included in the special district for not less than thirty days; or who, or whose spouse, owns taxable real property situated within the boundaries of the special district or the area to be included in the special district, whether or not the person resides within the special district. § 32-1-103(5)(a), C.R.S.2013. The definition also provides that "[a] person who is obligated to pay taxes under a contract to purchase taxable property situated within the boundaries of the special district or the area to be included within the special district shall be considered an owner within the meaning of this subsection." § 32-1-103(5)(b), C.R.S.2013.

The former version of the subsection limited the time for suit to thirty days after entry of the order. See Ch. 283, sec. 9, § 32-1-305(7), 2007 Colo. Sess. Laws 1190. This statutory amendment is not pertinent to this case.

The statute at issue in Burns, Ch. 199, sec. 7, § 89 -12-7(7), 1955 Colo. Sess. Laws 565, used language virtually identical to that in section 32-1-305(7).

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2013.