**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 15, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WENDY L. PEDEN,

      Plaintiff - Appellant,

v.

No. 15-1381

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

      Defendant - Appellee.
_____

**Appeal from the United States District Court**
**For the District of Colorado**
**(D.C. No. 1:14-CV-00982-LTB-KLM)**
_____

Bradley A. Levin, Levin Sitcoff PC, Denver, Colorado (Nelson A. Waneka, Levin Sitocoff PC, Denver, Colorado, Gary Doehling and Keller Caubarreaux, Gary Doehling, P.C., Grand Junction, Colorado, with him on the briefs), for Plaintiff-Appellant.

Heather A. Salg, Harris, Karstaedt, Jamison & Powers, P.C., Englewood, Colorado, for Defendant-Appellee.
_____

Before **LUCERO**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This case involves the handling of a claim under policies providing underinsured-motorist coverage. The tortfeasor, Mr. Terrill Graf, bought

his fiancée a van for her 50th birthday. Celebrating the birthday and new purchase, Mr. Graf drank liquor and then gathered four friends in the van. The plaintiff, Ms. Wendy Peden, was one of those friends. She says that she expected Mr. Graf only to show off the van and to photograph the group. But Mr. Graf drove away with his friends in the van. He crashed, causing serious injuries to Ms. Peden. She obtained $240,000 in insurance benefits. But Ms. Peden claimed more under her coverage for underinsured-motorist benefits.

The insurer (State Farm) initially denied the claim, but ultimately paid her an additional $350,000, the maximum amount that she could receive under the underinsured-motorist coverage. Ms. Peden sued State Farm under Colorado's common law and statutory law, claiming an unreasonable denial or delay in paying benefits. We must decide whether a reasonable fact-finder could conclude that State Farm unreasonably denied or delayed payment of benefits. The district court answered "no." We disagree and reverse.

**1.    Ms. Peden sought two payments from State Farm: one from Mr. Graf's liability coverage and one from Ms. Peden's underinsured-motorist coverage.**

Ms. Peden's injuries triggered Mr. Graf's liability coverage and Ms. Peden's underinsured-motorist coverage. State Farm, coincidentally,

2

insured both Mr. Graf for his liability[1] and Ms. Peden for underinsured-motorist coverage. Thus, State Farm bore dual responsibilities:

- to indemnify Mr. Graf for liability to his passengers, including Ms. Peden, and

- to pay Ms. Peden the amount that she was unable to recoup from Mr. Graf because of his lack of adequate liability coverage.

Mr. Graf's liability coverage had a cap of $500,000 for the accident. After investigating, State Farm recognized that Mr. Graf would likely incur liability to the four passengers for at least $500,000; thus, State Farm allocated the $500,000 among the four passengers in the van. Out of this $500,000, Ms. Peden obtained $210,000. She also obtained another $30,000 in medical payment benefits.

But she claimed that Mr. Graf owed more. If Ms. Peden were right, Mr. Graf would be considered "underinsured," triggering coverage for underinsured-motorist benefits. These benefits totaled $350,000 from two separate policies:

1. Mr. Graf's fiancée, who owned the van, had $250,000 in underinsured-motorist coverage under a State Farm policy. This coverage extended to Ms. Peden as a passenger.

2. Ms. Peden had her own State Farm policy with $100,000 in underinsured-motorist coverage.

---

[1] Mr. Graf obtained liability coverage through his fiancée's insurance policy.

3

Ms. Peden demanded the full $350,000 from State Farm, which would have brought her total payments to $590,000. To justify this amount, Ms. Peden stated that she had seven forms of injury, totaling more than $647,484.76 to $1,115,504.76:

|  | Nature of Injury | Amount Demanded |
|---|---|---|
| 1. | Past medical bills | $ 114,352.55 |
| 2. | Past wage losses | $ 7,500.00 |
| 3. | Future wage losses | "substantial" |
| 4. | College tuition that Ms. Peden had to forfeit | $ 7,622.21 |
| 5. | Noneconomic damages | $ 468,010 to $936,030 |
| 6. | Prejudgment interest | Unspecified |
| 7. | Costs | $ 50,000 (at minimum) |

TOTAL: $ 647,484.76 to $ 1,115,504.76
(plus a "substantial" amount for future wage loss and an unspecified amount for prejudgment interest)

State Farm denied the claim, stating that the prior payment of $240,000 had fairly compensated Ms. Peden for the amount that Mr. Graf owed.

**2.    Ms. Peden sued, and the district court granted summary judgment to State Farm.**

Dissatisfied, Ms. Peden sued State Farm, invoking Colorado common law and statutory law and alleging an unreasonable denial or delay in paying benefits. During the litigation, State Farm obtained additional

4

information and ultimately paid Ms. Peden the complete $350,000 in underinsured-motorist coverage.

Though Ms. Peden had now received the most she could recoup under the policies, she claimed that State Farm had unreasonably denied or delayed payment. State Farm moved for summary judgment, arguing that the handling of the claim was reasonable as a matter of law; Ms. Peden moved for partial summary judgment on her statutory claim.[2] The district court granted State Farm's motion, which led the court to deny Ms. Peden's motion as moot.

**3.      Engaging in *de novo* review, we apply Colorado substantive law.**

We engage in *de novo* review, viewing the evidence and drawing all reasonable inferences in favor of Ms. Peden. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015). In this manner, we consider whether State Farm has shown the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(a).

We assess Ms. Peden's claims under Colorado law. *See Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1223 (10th Cir. 2016) ("When jurisdiction is based on the parties' diverse citizenship, a federal court must assess

---

[2]      In her motion, Ms. Peden sought a legal determination that the "covered benefit" on her statutory claim consisted of "the $350,000 [underinsured-motorist] policy limit which ha[d] now been paid to [Ms. Peden]." Pl.'s Mot. for Partial Summary Judgment at 2, *Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-00982-LTB-KLM, 2015 WL 5244934 (D. Colo. Sept. 9, 2015), ECF No. 47, Appellant's App. at 27.

state law claims based on the substantive law of the state."). In this context, we defer to the decisions of the Colorado Supreme Court, *id.*, and "follow the Colorado Court of Appeals' reasoning . . . unless we are convinced that reasoning is incorrect." *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1263 (10th Cir. 2016).

**4.      State Farm owed Ms. Peden a duty of good faith.**

In Colorado, all contracts contain an implied duty of good faith and fair dealing. *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004). For insurance contracts, a breach of this implied duty can create liability under Colorado's common law and statutory law.

For a common-law claim involving the breach of an underinsured-motorist policy, the insured must prove that the insurer (1) acted "unreasonably under the circumstances" and (2) "knowingly or recklessly disregarded the validity of the insured's claim." *See id.* at 415 (standard for "first-party" claims); *see also Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657 (Colo. 2012) (noting that uninsured-motorist claims are "first-party" claims because the insured "is suing his own insurance company").

Colorado also provides insureds with a similar statutory cause of action. Col. Rev. Stat. §§ 10-3-1101 to -1116 (2016). By statute, an insurer

6

cannot "unreasonably delay or deny payment of a claim" to a first-party claimant. *Id.* § 10-3-1115(1)(a).[3]

**5.    Industry standards govern the reasonableness of State Farm's investigation.**

The duty of good faith requires the insurer to reasonably investigate an insured's claim. *See State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 189 (Colo. 2004). The reasonableness of an investigation is determined objectively under industry standards. *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004). These standards may be established through expert opinions or state law. *Id.*; *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004). Here the industry standards are proven through both sources: an expert opinion and a Colorado statute.

Colorado law creates standards for insurers' practices. *Allen*, 102 P.3d at 344. Under these standards, an insurer may not deny or delay a claim without "conducting a reasonable investigation based upon all available information." Colo. Rev. Stat. § 10-3-1104(1)(h)(IV). In conducting this investigation, the insurer must "promptly and effectively communicate with anyone it was reasonably aware had . . . information

---

[3]    Under both the statute and the common law, Ms. Peden must prove that State Farm acted unreasonably. The common-law claim includes a second element: the insurer's knowing or reckless disregard for the validity of Ms. Peden's claim. State Farm does not develop an argument on this additional element of the common-law claim. Instead, State Farm devotes only one sentence to this argument, stating that Ms. Peden failed "to address what State Farm knew, when, and what it did in response to receipt of additional information." Appellee's Response Br. at 19.

7

pertaining to the handling of [a plaintiff's] claim." *Dunn v. Am. Family Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010).

Ms. Peden's expert witness also detailed the applicable industry standards. Two of these standards are:

1. "An insurer, in conducting its investigation, should look for facts which support coverage with at least as much diligence as the insurer expends in any attempt to deny or limit coverage."

2. "A reasonable insurer should try to find all facts essential to an understanding of claimant medical conditions including . . . the injury['s] effects upon employment and future earning capacity."

Thomas J. Corridan, Expert Witness Report at 2, 5 (Apr. 27, 2015), Appellant's App. at 125, 128 (providing an expert opinion based on "the custom and practice in the industry").

With proof of these industry standards, the question is whether a reasonable fact-finder could conclude that State Farm breached its duty of good faith.

**6. A reasonable fact-finder could infer that State Farm breached this duty by failing to reasonably investigate Ms. Peden's underinsured-motorist claim.**

State Farm's adjuster acknowledged a duty to investigate the claim. In considering this duty, a reasonable fact-finder could conclude that the investigation was unreasonably deficient in two respects:

1. Further investigation was needed to determine whether Ms. Peden assumed the risk for the accident.

8

2. Further investigation was needed to determine whether Ms. Peden was entitled to greater damages from the tortfeasor (Mr. Graf).

**A. The fact-finder could rationally infer that further investigation was needed to reasonably determine whether Ms. Peden had assumed the risk for the accident.**

State Farm discounted the claim by 15%, reasoning that Ms. Peden had assumed the risk by going for a ride with a drunk driver. This reasoning was based on three alleged facts:

1. The driver, Mr. Graf, had been drunk.

2. Ms. Peden and three other passengers had entered the van.

3. Ms. Peden had known that Mr. Graf was drunk and was going to drive the van.

Ms. Peden disputes the third alleged "fact," contending that she did not know that Mr. Graf was drunk or that he was going to drive the van; Ms. Peden insists that she thought that Mr. Graf was simply going to photograph the group in the van.

*Did Ms. Peden know that they were going for a ride?* When initially denying the underinsured-motorist claim, State Farm relied on its investigation of Mr. Graf's claim under the liability policy. In investigating Mr. Graf's claim under the liability policy, State Farm was adverse to Ms. Peden because she had a tort claim against State Farm's insured (Mr. Graf).

9

During that investigation, State Farm obtained Mr. Graf's account of the incident, a questionnaire completed by Ms. Peden, and part of the police report.[4] Mr. Graf told State Farm that the passengers had known that he was going to drive the van. And in the questionnaire, Ms. Peden characterized the drive as a joyride for pleasure. As a result, State Farm concluded that Ms. Peden had known that Mr. Graf was going to drive drunk. Based on this conclusion, State Farm applied a 15% reduction to Ms. Peden's benefits under her underinsured-motorist claim.

Ms. Peden argues that State Farm jumped to this conclusion without adequate investigation. For example, Ms. Peden complains that in investigating the claim for underinsured-motorist coverage, State Farm should have asked to speak to the passengers.

Accompanying Ms. Peden in the van were three others: Alice Shope, Tod Conard, and Denise Conard. Ms. Peden, Mr. Conard, and Ms. Conard insist that they did not know that Mr. Graf was going to drive the van; instead, they say that they thought that someone was simply going to take a photograph.

---

[4]    State Farm unsuccessfully attempted to speak with Ms. Peden as part of its liability investigation. At that stage, however, Ms. Peden had no obligation to speak with State Farm. In investigating the liability claim, State Farm owed a duty only to Mr. Graf as the covered party. Later, when investigating Ms. Peden's claim for underinsured-motorist coverage in the run-up to litigation, State Farm never asked to speak with Ms. Peden.

State Farm had Ms. Peden's questionnaire, but it was not conclusive. In the questionnaire, Ms. Peden was asked: "Was the purpose of your trip business or personal? Where were you going?" Appellee's Response Br. at 6. The questions apparently assume that Ms. Peden knew that she was going for a ride. Her attorney's claims manager completed the questionnaire and states under oath that he described the trip as a personal joyride only to clarify that the trip was not related to business; he denies suggesting that Ms. Peden knew that Mr. Graf was going to drive the van. Viewing the form in a light favorable to Ms. Peden, we conclude that a fact-finder could fault State Farm for reading too much into the questionnaire without investigating further.

State Farm eventually paid the policy limits on Ms. Peden's underinsured-motorist coverage. But should State Farm have paid these benefits earlier? That depends in part on whether State Farm should have waited to reach a decision until after it had interviewed Ms. Peden, Mr. Conard, or Ms. Conard. Viewing the evidence favorably to Ms. Peden, a rational trier of fact could find that State Farm acted unreasonably when determining without adequate investigation that Ms. Peden had known that Mr. Graf would drive away.[5]

---

[5]    State Farm also argues that the complete police report showed that all of the passengers reported that they had decided to go for a drive. Appellee's Response Br. at 12. But State Farm did not have this part of the

*Did Ms. Peden know that Mr. Graf was drunk?* The same is true about Ms. Peden's knowledge of Mr. Graf's drunkenness. State Farm discounted Ms. Peden's claim based partly on a belief that Ms. Peden had known that Mr. Graf was drunk. Ms. Peden and two other passengers testified that they had not known that Mr. Graf was drunk.

Again, a fact-finder could reasonably conclude that State Farm did not perform an adequate investigation. State Farm did not try to speak with the passengers even though they could have shed light on whether they knew that Mr. Graf had been intoxicated.[6]

### B. A rational fact-finder could also infer that State Farm unreasonably investigated the damages that Ms. Peden could obtain against Mr. Graf.

State Farm valued Ms. Peden's claim against Mr. Graf at $272,474.76 (before deducting 15% for assumption of the risk). But this was less than 43% of the damages itemized in Ms. Peden's demand letter ($647,484.76 to $1,115,504.76).

---

police report when denying the claim. State Farm acknowledges that it obtained the full report after the litigation had already begun.

[6] State Farm relies in part on a photograph showing Mr. Graf and his fiancée drinking tequila from a bottle. Appellee's Response Br. at 10. But State Farm obtained this photograph after denying the claim. In any event, Ms. Peden testified that she had not seen Mr. Graf drinking from the bottle.



We do not know why State Farm discounted the claim so severely. All we know is that

- State Farm discounted the claim by 15% based on Ms. Peden's assumption of the risk and

- the valuation of $272,474.76 did not include anything for future noneconomic damages, prejudgment interest, or future wage loss.

A reasonable fact-finder could justifiably infer that State Farm inadequately investigated the damages that would have been available to Ms. Peden if she had sued Mr. Graf. Ms. Peden had alleged between $468,010 and $936,030 for noneconomic damages. *See* pp. 3-4, above. To support this allegation, Ms. Peden submitted documents including medical records, a photograph following surgery, and a college transcript. With this evidence, Ms. Peden stated that her injury had prevented her from graduating college, sapped her of energy, caused her to avoid people, diminished her memory, and hurt her concentration.

13

State Farm may have been able to reasonably discount Ms. Peden's dollar range for noneconomic damages. But why would State Farm decline to pay anything for future noneconomic damages or future wage loss? State Farm could have consulted with a physician, asked Ms. Peden to submit to a physical examination, or interviewed her. State Farm did none of these things. If it had, it could have been better equipped to assess Ms. Peden's future damages. Thus, a fact-finder could justifiably question the reasonableness of State Farm's investigation.[7]

* * *

Even if State Farm had adequately investigated Mr. Graf's liability to Ms. Peden, a genuine issue of material fact would exist on the

---

[7]     In her reply brief, Ms. Peden also argues that State Farm should have added at least some amount for prejudgment interest. Appellant's Response Br. at 21. This argument bears potential merit, for the Colorado Supreme Court has held that prejudgment interest constitutes an element of damages for purposes of a similarly worded provision. *USAA v. Parker*, 200 P.3d 350, 358-59 (Colo. 2009). But this argument was not adequately developed in Ms. Peden's opening brief. There, Ms. Peden addressed prejudgment interest in only a single sentence in the "Statement of the Case." Appellant's Opening Br. at 9-10. This sentence was inadequate for meaningful appellate review. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 546 n.8 (10th Cir. 2016) ("A mere suggestion that the district court erred—made solely in the 'Statement of the Case' section of an appellant's brief and not subsequently developed in the 'Argument' section—is insufficient to adequately brief an issue for consideration on appeal."). It was too late for Ms. Peden to develop this argument in her reply brief. *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011). Thus, Ms. Peden has waived her appellate challenge involving State Farm's failure to consider prejudgment interest in the initial claims decision. *See Aviva Life & Annuity Co. v. FDIC*, 654 F.3d 1129, 1136 n.6 (10th Cir. 2011) ("Plaintiffs raised this contention for the first time in their reply brief and the issue is therefore waived.").

14

reasonableness of State Farm's initial refusal to pay anything for future noneconomic damages or future wage loss. As noted above, Ms. Peden provided State Farm with her college transcript, medical records, and photographic evidence to demonstrate future noneconomic damages and wage loss. A fact-finder could reasonably conclude that State Farm acted unreasonably in discounting that evidence.

**7.      State Farm's alleged compliance with regulations does not preclude summary judgment.**

State Farm argues that a Colorado regulation shows that the investigation was reasonable. Appellee's Response Br. at 24-26.[8] But compliance with this regulation does not mean that the insurer acted reasonably. *See Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1228 n.7 (10th Cir. 2016) (stating that compliance with this regulatory provision on timely claims decisions does not preclude a finding that the insurer acted unreasonably).

**8.      State Farm waived its new estoppel theory.**

At oral argument, State Farm asserted an estoppel theory. *See* Oral Argument at 26:40 ("When the demand was given to State Farm from plaintiff's counsel, it said you have all the information that you need to conduct your evaluation."); *see also* Appellee's Response Br. at 8

---

[8]      The regulation requires Colorado property- and casualty-insurers to make a decision on claims within 60 days (in the absence of a reasonable dispute or a failure by the insured to comply with the policy's terms and conditions). 3 Colo. Code Regs. § 702-5:5-1-14, Rule 4(A)(1)(a).

(Statement of the Case) ("[Y]ou have permission to review and rely on any information in the State Farm file . . . ." (quoting Letter from Gary Doehling, Plaintiff's counsel, to Kristine Krist, Adjuster (Jan. 31, 2014), 2 Appellee's Supp. App. at 52). Under this theory, State Farm contends that it could rely solely on what Ms. Peden provided because she had given permission for State Farm to decline further investigation. But State Farm did not argue estoppel in its answer or appellate brief; therefore, this argument is waived. *See Bentley v. Cleveland Cty. Bd. of Cty. Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994) ("Failure to plead an affirmative defense results in a waiver of that defense." (citing Fed. R. Civ. P. 8(c))); *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) ("Issues raised for the first time at oral argument are considered waived.").

9.     **Ms. Peden's motion for partial summary judgment can no longer be considered moot.**

Ms. Peden moved for partial summary judgment on her statutory claim. *See* p. 5 & note 2, above. Upon granting summary judgment to State Farm, the district court denied Ms. Peden's motion as moot. Because we reverse the award of summary judgment to State Farm, Ms. Peden's motion can no longer be considered moot. The district court should address this motion on remand.

16

**10.    Disposition**

We reverse the award of summary judgment to State Farm and vacate the denial of Ms. Peden's motion for partial summary judgment. In addition, we remand to the district court for proceedings consistent with this opinion.