FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

US GENERAL, LLC,

    Plaintiff - Appellee,

v.

GUIDEONE MUTUAL INSURANCE
COMPANY,

    Defendant - Appellant.

No. 22-1145
(D.C. No. 1:18-CV-01256-REB-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **TYMKOVICH**, and **MATHESON**, Circuit Judges.
_____

Defendant-Appellant GuideOne Mutual Insurance Company ("GuideOne")

appeals following a jury verdict in favor of Plaintiff-Appellee US General, LLC ("US

General").  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  *Factual History*

The evidence presented at trial, stated in the light most favorable to the jury's

verdict, *Johnson v. Unified Government of Wyandotte County/Kansas City, Kansas*,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

371 F.3d 723, 728-29 (10th Cir. 2004), was as follows.  In 2016, a hailstorm damaged a building owned by Crossroads American Baptist Church ("Crossroads") and insured by GuideOne.

Crossroads submitted a claim to GuideOne for the hailstorm damage. Crossroads hired US General as its general contractor to perform the repairs and later assigned its interest in the insurance policy to US General.

GuideOne retained independent adjuster Jon Hayes to estimate the cost of repairs, which he said was about $55,000.[1]  US General believed the repairs would cost significantly more and commissioned its own estimate, which was at least $190,000.  GuideOne next asked an engineer to assess the nature and extent of damage to the building.  The engineer's report identified significant areas of damage beyond Mr. Hayes's estimate.

Mr. Hayes then revised his estimate upward, but it still failed to include large portions of the damage and did not allow for any overhead and profit for US General. Throughout 2017, US General continued requesting payments for repairs not included in Mr. Hayes's estimate.  GuideOne then commissioned a building consultant, Jeff Arreguy, to provide a second opinion on the cost of repairs.  In November 2017, he found that the scope of the project was $369,000.

Throughout this time, GuideOne issued partial payments for certain areas of damage, but the payments fell far short of the funds US General needed to complete

---

[1] We use round numbers to refer to the sums in dispute.

2

the repairs.  This hindered US General's ability to begin making the repairs because, according to the testimony of its principal, all of the repairs "had to start concurrently" and it is "more expensive to start and stop a project."  App., Vol. VIII at 165.  Thus, US General did not begin work on the building until early 2018. According to testimony at trial, the repeated delays in payment caused significant difficulties for US General in its relationship with the subcontractors hired to perform some of the work.  *Id.* at 170 (the delayed payments resulted in "a contentious period of time").

US General continued working through the spring of 2018 and encountered additional expenses covered by the insurance policy.  On April 4, 2018, US General sent an invoice to GuideOne for $91,000.  The same day, a GuideOne representative said a "check [wa]s in the mail" for that amount.  App., Vol. VIII at 169.  The check did not arrive.  In July 2018, GuideOne issued a partial payment of $23,000.  US General did not receive full payment for the $91,000 invoice until October 4, 2018.

By that point, GuideOne had paid most of the money it owed under the insurance policy.  But one area remained in dispute.  US General requested $70,000 for work it expected to perform on the building's electrical systems and heating, ventilation, and air conditioning ("HVAC").  GuideOne, however, refused to pay the $70,000 for the electrical and HVAC systems.

## B. *Procedural History*

### 1. The Complaint and Pretrial Motion Practice

Crossroads brought this case against GuideOne in May 2018.  It filed an amended complaint on October 19, 2018, after US General had received the final payment from GuideOne.  The amended complaint asserted three claims:

(1) Breach of contract, based on GuideOne's refusal to pay the $70,000 requested for electrical and HVAC work;

(2) Common law bad faith breach of insurance contract, based on GuideOne's alleged bad faith in refusing to pay the amount it owed under the policy; and

(3) Unreasonable delay of payment under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.

In September 2019, Crossroads successfully moved to join US General to act as Plaintiff.

In May 2019, GuideOne moved for summary judgment on all of US General's claims.  In response, US General voluntarily dismissed its second claim for common law bad faith breach of insurance contract.  The district court denied summary judgment as to the remaining claims, writing, "[i]t is apparent that there exist genuine disputes as to material facts that are not appropriate for summary resolution."  App., Vol. IV at 169-70.

### 2. The Jury Trial

The case proceeded to a jury trial on US General's remaining two claims— breach of insurance contract and unreasonable delay of insurance benefits.  GuideOne did not file a motion for a judgment as a matter of law under Federal Rule of Civil

Procedure 50(a) during the trial, either at the close of US General's evidence or after it presented its own evidence. App., Vol. IX at 59-61, 248-58.

The district court drafted jury instructions and a verdict form and circulated them to the parties. GuideOne said it had "[n]o objection" to the instructions or verdict form. App., Vol. X at 218.

The district court instructed the jury that it must find in favor of US General on the unreasonable delay claim if it determined:

> "1. That the defendant delayed and/or denied payment of insurance benefits to the plaintiff; and
>
> 2. That the defendant's delay and/or denial of payment was without a reasonable basis."

App., Vol. V at 227. The court then instructed the jury that if it found GuideOne liable on the unreasonable delay claim, it must record on the verdict form "the total dollar amount of the insurance benefits for which payment was delayed and/or denied without a reasonable basis." *Id*. at 231.

The verdict form required the jury (1) to indicate whether GuideOne was liable on each of US General's two claims, and (2) to state the amount of damages for each claim on which it found liability. App., Vol. V at 199-203.

For US General's breach-of-contract claim, the verdict form required the jury to list the amount of "general damages" that US General had suffered due to GuideOne's breach. *Id.* at 200. If the jury found no general damages, it was permitted to award nominal damages of one dollar.

For the unreasonable delay claim, the verdict form required the jury to identify the "total amount of insurance benefits, if any, [it] f[ound] by a preponderance of the evidence were delayed or denied by GuideOne . . . without a reasonable basis." *Id*. at 202. The form also required the jury to assess damages on the unreasonable delay claim separately for the time periods before and after May 23, 2018, the date the original complaint was filed. *Id*.

During deliberations, the jury sent the following written query to the district court: "For questions 7 and 8 [on the verdict form]"—that is, the two questions asking the jury to assess damages for the unreasonable delay claim for the periods before and after the case was filed—"will the[] amounts get paid out to U.S. General or are they just statements of facts[?]" *Id.* at 237. The court responded in writing that "[a]ny damages you award in your answers to questions 7 and 8 on the Verdict Form will be awarded to ('paid out to') the plaintiff, US General, LLC." *Id*. at 238.

The jury returned a verdict in favor of US General on both claims. On the breach-of-contract claim, the jury found that US General had not suffered any general damages, but awarded $1 in nominal damages. On the unreasonable delay claim, the jury found that GuideOne had unreasonably delayed payment of $155,700 in insurance benefits before May 23, 2018, and $136,700 after that date. When the jury verdict was announced, GuideOne did not object or argue that it was inconsistent. App., Vol. IX at 289-90.

3. **Post-Trial Motions**

GuideOne filed a motion to amend the judgment under Federal Rule of Civil Procedure 59(e). It argued that (1) US General could obtain only $1 for unreasonable delay damages because the jury found only $1 of nominal damages on the breach-of-contract claim, (2) insufficient evidence supported the unreasonable delay claim, and (3) US General was not entitled to any unreasonable delay damages stemming from the period after the lawsuit was filed.

US General moved for attorney fees of $391,295.50, under Colo. Rev. Stat. § 10-3-1116, which provides that if a plaintiff succeeds on an unreasonable delay or denial claim, it may recover attorney fees and double damages. It also requested an amended judgment to reflect the double damages provided by the statute.

On March 30, 2022, the district court denied GuideOne's motion to amend the judgment and granted US General's motion for double damages and attorney fees. This appeal followed.

## II. DISCUSSION

GuideOne argues on appeal that

A. The district court erred by allowing US General to recover unreasonable delay damages for delays that occurred after the complaint was filed.

B. The jury verdict was inconsistent because the jury awarded significant damages on US General's unreasonable delay claim, but no damages on its breach-of-contract claim.

C. The evidence at trial was insufficient to support the jury's verdict because the evidence showed that GuideOne complied with Colorado insurance regulations.

7

D. The district court abused its discretion in granting US General's request for attorney fees.

A. ***Damages for Post-Complaint Delays***

GuideOne argues that, under Colorado law, the filing of the complaint suspended its duty to negotiate with US General, and thus US General cannot recover damages on its unreasonable delay claim for post-complaint delays. Aplt. Br. at 11-14. GuideOne asserts that the district court's failure to acknowledge this pre-complaint/post-complaint distinction caused two errors: (1) the jury instructions and verdict form should have told the jury it could not assess damages for post-complaint delays, *id.* at 13, and (2) the district court should have granted the Rule 59(e) motion to amend the judgment, *id.* at 18, 23.

We affirm. GuideOne waived any challenge to the jury instructions, and its argument misinterprets Colorado law.

1. **Legal Background**

Colo. Rev. Stat. § 10-3-1116 provides that an insured can sue its insurer if the insurer "unreasonably delay[ed] or deni[ed]" the insured's claim for benefits. "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." *Id.* § 10-3-1115.

Sections 10-3-1115 and 10-3-1116 created a "new private right of action" that is similar to, but distinct from, "an action alleging breach of the common law duty of good faith and fair dealing." *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964,

973 (Colo. App. 2011). The statutes' legislative history reveals that "their purpose . . . was to announce a standard of conduct . . . in addition to and less onerous [for plaintiffs] than the common law standard of good faith and fair dealing." *Id*. at 974.

In cases dealing with the common-law duty of good faith and fair dealing, Colorado courts have held that the "duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer, although the adversarial nature of such proceedings *may* suspend the insurer's obligation to negotiate as a reflection of good faith." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) (emphasis added); *see also Bucholtz v. Safeco Ins. Co.*, 773 P.2d 590, 592-93 (Colo. App. 1988); *Bankr. Est. of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523-24 (Colo. App. 2008).

No Colorado court has applied this principle—that the initiation of a lawsuit may "suspend" an insurer's duty to make prompt payments—to unreasonable delay claims under § 10-3-1115. And no Colorado court has ever held that an unreasonable delay claim—whether statutory or common law—encompasses only damages arising before the insured files suit. To the contrary, the Colorado courts of appeals have repeatedly emphasized that "bad faith breach of an insurance contract encompasses all of the dealings between the parties, including conduct occurring before, during, and after trial." *Bankr. Est. of Morris*, 192 P.3d at 524; *see also Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 815 (Colo. App. 2006). In fact, the Colorado Supreme Court cited with approval a court of appeals case holding that

9

"evidence of bad faith conduct which occurred after the filing of the complaint was admissible" because the evidence indicated "a continuation of the same difficulties that preceded the filing of the complaint." *Dale v. Guaranty Nat. Ins. Co*., 948 P.2d 545, 552 (Colo. 1997) (quoting *Southerland v. Argonaut Ins. Co.,* 794 P.2d 1102, 1106 (Colo. Ct. App. 1990)); *see also id*. ("[T]he tort of bad faith breach of insurance contract encompasses an entire course of conduct.").

2. **Analysis**

   a. *Jury instructions and verdict form*

   To the extent GuideOne's pre-complaint/post-complaint argument is based on the jury instructions or verdict form, it is waived. Before releasing the jury to deliberate, the district court circulated the jury instructions and verdict form to the parties and gave them an opportunity to lodge objections. App., Vol. X at 217-18. GuideOne said it had "[n]o objection" to the instructions or verdict form. *Id*. at 218.

   If a party fails to timely object to jury instructions or verdict forms that it later challenges on appeal, we review the instructions and forms for plain error. *Barber v. T.D. Williamson, Inc*., 254 F.3d 1223, 1227 (10th Cir. 2001). "Plain error is (1) error, (2) which is plain, (3) which affects substantial rights, (4) and which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Somerlott v. Cherokee Nation Distribs., Inc*., 686 F.3d 1144, 1151 (10th Cir. 2012). If the party fails to "argue for plain error and its application on appeal," it waives appellate review of the issue. *Richison v. Ernest Grp., Inc*., 634 F.3d 1123, 1131 (10th Cir. 2011).

10

Here, the district court provided both parties the opportunity to lodge objections to the jury instructions and forms, and GuideOne said it had none. App., Vol. X at 218. It therefore forfeited a challenge to the jury instructions and verdict forms, and because GuideOne has not advanced a plain error argument in its opening brief, it has waived the issue. *Richison*, 634 F.3d at 1131.

In its reply brief, GuideOne asserts that even "under a waiver standard," "[t]he trial court erred in reviewing the jury instruction[s]." Aplt. Reply Br. at 2. But even if we were to entertain this argument, GuideOne fails to address the elements of plain error, and instead tries to argue that it did not forfeit the issue in district court. *Id*. at 3. Because GuideOne "make[s] no effort to explain how the district court plainly erred" under the relevant legal standard, it has waived the issue. *Platt v. Winnebago Indus., Inc*., 960 F.3d 1264, 1273 (10th Cir. 2020).[2]

b. *Rule 59(e) motion*

We "review[] the district court's ruling on a Rule 59(e) motion for abuse of discretion." *Loughridge v. Chiles Power Supply Co*., 431 F.3d 1268, 1275 (10th Cir. 2005). To the extent the district court's ruling depended on a legal conclusion, we

---

[2] GuideOne also contends that "the verdict form dropped 'unreasonable' delay or denial thereby incorrectly instructing the jury on the law for bad faith breach on [sic] insurance contract." Aplt. Br. at 13. Because GuideOne failed to raise a contemporaneous objection to the verdict form's wording and fails to argue plain error on appeal, this argument is waived. Also, GuideOne is wrong. The form instructed the jury to indicate the amount of insurance benefits that "were improperly delayed and/or denied [by GuideOne] . . . *without a reasonable basis*." App., Vol. V at 231 (emphasis added).

review that conclusion de novo. *Burke v. Regalado*, 935 F.3d 960, 1044 (10th Cir. 2019).

GuideOne argues that, due to its post-complaint argument, the district court erred in denying its motion to amend the judgment. Aplt. Br. at 23-27. It contends that a party cannot maintain an unreasonable delay claim premised on post-litigation conduct and asserts that the district court should have amended the verdict to remove damages stemming from delays that occurred after May 23, 2018. *Id*. We agree with the district court.

Colo. Rev. Stat. § 10-3-1115, the unreasonable delay statute, contains no language stating that an insurer cannot incur liability for unreasonably delaying payment after the insured files suit. The cases GuideOne cites only concern the common-law duty of good faith and fair dealing, and the statutory cause of action imposes a "less onerous" standard on plaintiffs. *Kisselman*, 292 P.3d at 975. GuideOne thus presents no authority for its claim that the filing of a lawsuit precludes an insured from recovering for ensuing delays in payment, and neither the text nor the legislative history of the statute supports GuideOne's position.

Even if the same standard governs common-law and statutory delay claims, Colorado cases establish that an insurer's obligation to act in good faith "continues . . . through a lawsuit or arbitration between the insured and the insurer." *Sanderson*, 251 P.3d at 1217; *see also Bucholtz*, 773 P.2d at 592-93; *Bankr. Est. of Morris*, 192 P.3d at 523-24. The Colorado Supreme Court reinforced this principle when it cited with approval a case upholding the admission of "evidence of bad faith conduct

12

which occurred after the filing of the complaint." *Dale*, 948 P.2d at 552 (citing *Southerland*, 794 P.2d at 1106). *Dale* also suggested that if an insurance company delays payments resulting from arbitration, that would support a bad faith breach of insurance contract claim, indicating that unreasonable delay claims can be based on conduct that occurred after an adversarial proceeding began. *See id*. at 552 n.10. In short, the statute and the pertinent cases support that an insurer must generally continue to make prompt payments of undisputed claims even during litigation with the insured.

GuideOne's arguments to the contrary are unpersuasive. It cites cases holding that the initiation of an adversarial proceeding "*may* suspend the insurer's obligation to negotiate as a reflection of good faith" in some circumstances. *Sanderson*, 251 P.3d at 1217 (citing *Bucholtz*, 773 P.2d at 592-93) (emphasis added). But it offers no reason why, in *this* case, US General's complaint suspended its duty to promptly pay uncontested claims.

The facts of this case demonstrate the infirmity of GuideOne's argument. In April 2018, US General sent GuideOne an invoice for $91,000 of repairs. That same day, a GuideOne representative said the "check is in the mail"—an apparent concession that the policy covered those repairs. App., Vol. VIII at 169. But the check never came, so US General initiated this suit in May 2018. Although GuideOne does not dispute that the policy covered the $91,000, it did not pay until October 2018, six months after US General sent the invoice. *Id*. at 173. In other words, according to US General's evidence, GuideOne unreasonably delayed

13

payments for repairs that were undisputedly covered by the policy before and after US General filed the complaint. GuideOne does not explain why filing the complaint terminated its obligation to promptly make uncontested payments.

For these reasons, we affirm.

## B. *Inconsistent Jury Verdict*

GuideOne argues that damages under the Colorado unreasonable delay statute are limited to the amount of benefits the insurer owes under the insurance policy, Aplt. Br. at 14, and that a plaintiff's unreasonable delay damages are capped at its breach-of-contract damages. *Id*. at 15. Because the jury awarded no general breach-of-contract damages, GuideOne argues that the award of unreasonable delay damages produced an internally inconsistent verdict. *Id*. at 16-17.

GuideOne raised this argument in its motion to amend the judgment under Federal Rule of Civil Procedure 59(e). App., Vol. X at 9-10. The district court held that GuideOne waived this argument by failing to object to the verdict when the jury rendered it. *Id*. at 271-72. Because GuideOne does not challenge that determination on appeal, we affirm.

## 1. **Legal Background**

Colo. Rev. Stat. § 10-3-1116, the unreasonable delay statute, provides that when an insured proves an insurer unreasonably delayed or denied payment under an insurance policy, the insured "may bring an action . . . to recover reasonable attorney fees and court costs and two times the covered benefit." *Id.* § 10-3-1116(1). We have held that a claim for "two times the covered benefit" under § 10-3-1116 is

14

"distinct from the insured's underlying entitlement to benefits under the insurance contract." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1229 (10th Cir. 2016). Thus, "[i]n total, the damages may equal three times the covered benefit, but not because the damages were trebled. The insured's recovery would be predicated on liability for two distinct causes of action—the insurer's breach of contract and its unreasonable delay or denial of a claim." *Id.* at 1230.

2. **Analysis**

In its Rule 59(e) motion, GuideOne did not frame its argument in terms of an inconsistency in the jury's verdict. ROA, Vol. X at 10-11. Instead, it simply stated that "[t]he judgment should be amended to reflect the jury determination of damages of $1 and an unreasonable delay of payment of that covered amount." *Id*. at 10.

The district court said GuideOne's "argument that the award of one dollar in nominal damages on the claim for breach of contract limits the damages which can be awarded on the claim for unreasonable delay . . . is, in essence, a claim that the verdict is inconsistent." App., Vol. X at 272. Because GuideOne did not object to the alleged inconsistency when the jury rendered its verdict, the district court found that it had waived the argument. *Id*. at 271-72.

In its brief on appeal, GuideOne does not address the district court's understanding that its Rule 59(e) motion claimed the jury's verdict was inconsistent. Aplt. Br. at 14-18. At oral argument, however, GuideOne said its contention that the verdict should be amended to reflect $1 in unreasonable delay damages is, in effect, a claim that the jury's verdict was inconsistent. Oral Arg. at 06:55-07:07. But

15

GuideOne does not challenge the district court's decision that it waived this argument by failing to object while the jury was still present.  Aplt. Br. at 14-18.

GuideOne has therefore waived this issue.  When a jury returns its verdict, a party that believes the verdict is inconsistent must "object . . . before the jury is discharged."  *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 911 (10th Cir. 2004) (quotations omitted).  If the party fails to do so, it has waived the issue "unless the verdict is inconsistent on its face such that the entry of judgment upon the verdict is plain error."  *Id*.  "Plain error" review in this context does not involve the traditional four-part test.  *Id*. at 911 n.2.  Instead, a facially inconsistent verdict is plain error. *Id*. at 911.

GuideOne did not object to the verdict after the verdict was read and before the district court dismissed the jury.  App., Vol. IX at 289-90.  GuideOne thus may mount a challenge on appeal only by showing the verdict was inconsistent on its face. *Bartee*, 374 F.3d at 911.  But GuideOne makes no attempt in its briefing to do so. Indeed, at oral argument, it conceded that any inconsistency in the verdict was difficult to ascertain at the time the jury rendered its decision.  Oral Arg. at 12:14-12:43.

For these reasons, GuideOne waived its challenge to the asserted inconsistency in the jury's verdict, so we affirm.

## C. *Sufficiency of the Evidence*

GuideOne contends that insufficient evidence supported US General's unreasonable delay claim because it complied with Colorado insurance regulations in

16

its treatment of US General.  Aplt. Br. at 18-21.  We hold that GuideOne waived any challenge to the sufficiency of the evidence by failing to file a motion for a judgment as a matter of law at trial.

Under Federal Rule of Civil Procedure 50(a)(1), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may grant a motion for a judgment as a matter of law against the party.  Failure to challenge the sufficiency of the evidence under Rule 50(a) precludes such a challenge on appeal.  *See ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1183 (10th Cir. 2011).

GuideOne argues US General's evidence for its unreasonable delay claim was insufficient because GuideOne complied with the Colorado insurance regulation providing that "[a]ll insurers . . . shall make a decision on claims and/or pay benefits due under the policy within sixty (60) days after receipt of a valid and complete claim unless there is a reasonable dispute between the parties concerning such claim, and provided the insured has complied with the terms and conditions of the policy of insurance."  Colo. Code Regs § 702-5:5-1-14(A)(1)(a).  But GuideOne's failure to raise this argument in a Rule 50(a) motion during the trial, App., Vol. IX at 58-61,

17

248-58, precludes it from asserting the challenge on appeal.[3] *ClearOne Commc'ns, Inc.*, 653 F.3d at 1183. Because GuideOne waived this issue, we affirm.[4]

## D. *Attorney Fees*

GuideOne argues the district court abused its discretion when it granted US General's request for $391,295.50 in attorney fees. Aplt. Br. at 27-31. To support its request before the district court, US General submitted a "lodestar calculation"—it multiplied the hours its attorneys worked on the case by a proposed hourly rate for each attorney. App., Vol. VI at 206. The court accepted this calculation, finding that the hours billed and the proposed hourly rates were reasonable. App., Vol. X at 281-82. GuideOne argues the court erred in reaching these factual findings. Aplt. Br. at 27-31. We disagree with GuideOne and affirm.

---

[3] GuideOne suggests the evidence did not support the jury's verdict because GuideOne "paid the replacement cost upon being provided confirmation that the agreed upon repairs had been performed, again as per the policy." Aplt. Br. at 9; *see also* Oral Arg. at 00:41-01:37. But GuideOne never presented this argument to the district court in a Rule 50(a) motion for a judgment as a matter of law, so the argument is waived.

[4] GuideOne's argument also fails on the merits. We have rejected GuideOne's contention that "[t]he fact [that it] complied with . . . [Colorado's] prompt payment regulations must preclude, as a matter of law, [US General's] claim of unreasonable delay and denial." Aplt. Br. at 21. In *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887 (10th Cir. 2016), we addressed the interaction between Colorado's prompt payment regulation and unreasonable delay claims, and held that "compliance with this regulation does not mean that the insurer acted reasonably." *Id.* at 894; *see also Etherton*, 829 F.3d at 1228 n.7 ("The regulations only provide minimum standards to avoid penalties. Although an insurer may act unreasonably if it violates the regulation, it does not follow an insurer acts reasonably if it meets the regulation's minimum standards.").

1. **Standard of Review**

"We review a district court's decision on whether to award attorney fees for abuse of discretion, but we review de novo the district court's application of the legal principles underlying that decision." *Pound v. Airosol Co.*, 498 F.3d 1089, 1100-01 (10th Cir. 2007) (quotations omitted). To the extent the district court made factual findings to support its fee award, we review those findings for clear error, *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002), meaning we "may reverse only if the district court's finding lacks factual support in the record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred," *Nat'l Fitness Holdings, Inc. v. Grand View Corp. Ctr.*, 749 F.3d 1202, 1206 (10th Cir. 2014). Whether hours billed and hourly rates for a lodestar calculation are reasonable is a question of fact. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986).

2. **Additional Procedural History**

Four attorneys worked on this case on behalf of US General—Michael Duffy, Larry Bache, Jonathan Bukowski, and Timothy Burchard. At trial, Mr. Duffy and Mr. Bache examined witnesses and delivered US General's opening and closing statements. App., Vol. VI at 220-39 (US General's billing statements). Mr. Bukowski also attended the trial to coordinate the display of US General's exhibits, assist in trial preparation, and perform legal research.

In its motion for attorney fees, US General proposed a lodestar calculation of $391,295.50. To support that calculation, US General submitted a detailed billing

statement documenting the time spent by each attorney, along with an affidavit from Mr. Bache describing the work he and his colleagues performed. The lodestar calculation included billing rates for Mr. Duffy at $550 per hour, Mr. Bache at $450 per hour, Mr. Bukowski at $400 per hour, Mr. Burchard at $350 per hour, and paralegals at $125 per hour. US General also submitted a letter from a Denver attorney Rory Francis, who opined that (1) the hourly rates at which US General's lawyers billed "correspond with each attorney's education, experience, and expertise" and are within the range of rates charged by comparable attorneys, though "near the top of" that range; and (2) the hours billed were reasonable in light of the demands of the case. App., Vol. VI at 258-59.

GuideOne opposed US General's attorney fees request. It provided a report from another Denver attorney Troy Rackham. He opined that the hourly rates charged by the four US General attorneys were higher than the prevailing market rates, given these attorneys' legal experience. App., Vol. X at 42-48. GuideOne also contended that Mr. Bukowski's presence at trial was unnecessary.

The district court granted US General's motion and awarded the lodestar amount—$391,295.50. In reaching that decision, the district court found that (1) US General's attorneys' hourly rates were reasonable—though "toward the high end of reasonable rates"—given the prevailing market rates, App., Vol. X at 281; (2) US General's attorneys had "achieved a high degree of success in this case" in light of the large jury verdict, which supported relatively high hourly rates, *id*. at 282; and (3) the amount of time US General's attorneys spent on the case was reasonable,

20

including the time that Mr. Bukowski spent at trial.  The court noted that "Mr. Bukowski's extensive knowledge of the record was important to preparation of trial witnesses and developing strategy for direct and cross examination at trial."  *Id*. at 282.

3.  **Legal Background**

As noted, Colo. Rev. Stat. § 10-3-1116(1) provides that a plaintiff who brings a successful unreasonable delay claim under § 10-3-1115 can recover "reasonable attorney fees."  We apply Colorado law to assess the reasonableness of the fee request.  *See Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279 (10th Cir. 2011).

Under Colorado law, "[i]f a statute providing for a fee award does not provide a specific definition of 'reasonableness,' the amount of the award must be determined in light of all the circumstances, based upon the time and effort reasonably expended by the prevailing party's attorney."  *Tallitsch v. Child Support Servs., Inc*., 926 P.2d 143, 147 (Colo. App. 1996).  "The initial estimate by the court of a reasonable attorney fee is reached by calculation of the 'lodestar' amount.  This amount represents the number of hours reasonably expended multiplied by a reasonable hourly rate and carries with it a strong presumption of reasonableness."  *Id*.  After calculating the lodestar, the district court may increase or decrease the fee award "based on the degree of success achieved."  *Id*. at 148.

In determining a reasonable hourly rate, the district court should consider "the prevailing market rate by private lawyers in the community," as well as the "experience, reputation, and ability" of the lawyers seeking fees.  *Payan v. Nash*

21

*Finch Co.*, 310 P.3d 212, 221 (Colo. App. 2012). After identifying a reasonable hourly rate, the district court must also assess the "necessity for the hours billed." *In re Marriage of Aragon*, 444 P.3d 837, 841 (Colo. App. 2019).

4. **Analysis**

Because GuideOne has not shown on appeal that the district court erred in its factual determinations underlying the fee award, the court did not abuse its discretion in approving that award.

a. *Hourly rate*

Both parties presented reports on the reasonableness of the proposed hourly rates from experienced Denver attorneys familiar with the local legal market. *Compare* App., Vol. VI at 258-59 *with* App., Vol. X at 29-30. GuideOne does not explain how the district court clearly erred in crediting US General's expert over GuideOne's. Because US General supported its fee request with evidence about the Denver legal market, the district court's determination that those fees were reasonable has "factual support in the record." *National Fitness Holdings, Inc.*, 749 F.3d at 1206. The district court therefore did not clearly err in finding that US General's proposed hourly rates were reasonable in light of the Denver legal market.[5]

---

[5] The district court noted that US General's hourly rates were "toward the high end of reasonable rates for this type of litigation." App., Vol. X at 281. We agree. But because US General introduced expert evidence suggesting that the proposed rates were within the reasonable range in the Denver market, we cannot say the district court abused its discretion in approving those rates.

22

b. *Degree of success*

In addition to its legal market finding, the district court found that US General's proposed hourly rates were reasonable because its attorneys "achieved a high degree of success in this case," App., Vol. X at 282—a jury verdict of almost $300,000, which the court later doubled under Colo. Rev. Stat. § 10-3-1116 at US General's request.

GuideOne perfunctorily challenges the district court's assessment of US General's success. Aplt. Br. at 29. It suggests that because the jury awarded no general damages on US General's breach-of-contract claim, US General achieved only "limited success." Aplt. Br. at 29. But this ignores the large unreasonable delay award. Viewing the case as a whole, we conclude the district court did not clearly err in determining US General's attorneys achieved a "high degree of success." App., Vol. X at 282. And, under Colorado law, a high "degree of success achieved" supports a larger fee award. *Tallitsch*, 926 P.2d at 147.

c. *Number of hours*

GuideOne's primary challenge on appeal to the number of hours used for the lodestar calculation is its argument that Mr. Bukowski's presence at trial was unnecessary.[6] It provides no reason for us to disagree with the district court's

---

[6] GuideOne also suggests the time US General spent on summary judgment briefing should be deducted from the lodestar because its summary judgment motions "only became necessary" when "Plaintiff[] fail[ed] to originally bring this lawsuit in the name of the correct party." Aplt. Br. at 31. We disagree.

As noted above, Crossroads was the original plaintiff, but had assigned its rights under the insurance contract to US General and successfully moved to join US

23

analysis.  The district court observed that even though Mr. Bukowski did not examine

witnesses or deliver the opening statement or closing argument, his "extensive

knowledge of the record" helped US General strategize at trial.  App., Vol. X at

281-82.  US General's billing records confirm this point.  On each day of the trial,

Mr. Bukowski billed time for assisting the other attorneys in their preparation of

witnesses and trial arguments, including legal research.  *See, e.g.*, App., Vol. VI

at 238 (Mr. Bukowski bills time for "research[ing] directed verdict standards" and

"work[ing] with Mike Duffy to review trial notes and prepare closing argument.").

The district court thus did not clearly err in determining that Mr. Bukowski's

presence at trial was reasonable.

　　　　For these reasons, we affirm the district court's attorney fees award.

---

General as plaintiff.  GuideOne suggests that an error by US General's attorneys
necessitated the summary judgment briefing and unnecessarily increased the number
of hours they spent on the case.  Aplt. Br. at 31.  Because GuideOne fails to develop
this contention, it is arguably waived.  *See Adler v. Wal–Mart Stores, Inc.,* 144 F.3d
664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are
waived.").  Also, as the district court observed, the issues in the summary judgment
briefing had nothing to do with which party was the proper plaintiff.  App., Vol. X at
282; *see also* Dist. Ct. Doc. 28 (GuideOne's first motion for summary judgment);
App., Vol. II at 9-11 (GuideOne's second motion for summary judgment).  We see no
reason to deduct hours related to summary judgment briefing.

III. **CONCLUSION**

We affirm the district court's judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge